Jeremy P. Blumenfeld (*pro hac vice*)
jeremy.blumenfeld@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000 | Fax: (215) 963-5001

Gina McGuire (*pro hac vice*)
gina.mcguire@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000 | Fax: (212) 309-6001

Mayra Negrete, Bar No. 333491
mayra.negrete@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard, Suite 300
Costa Mesa, CA 92626
Tel.: (714) 830-0600 | Fax: (714) 830-0700

*Counsel for Defendants JPMorgan Chase & Co.*
*and JPMorgan Chase Bank, N.A.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. WRIGHT, individually and as representative of a class of participants and beneficiaries and on behalf of the JPMorgan Chase 401K Savings Plan, | Case No.: 2:25-cv-00525-JLS-JC |
| *Plaintiff,* | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | [Declaration of Jeremy P. Blumenfeld; Request for Judicial Notice; and [Proposed] Order, filed herewith] |
| JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, N.A.; and DOES 1-10, inclusive, | Date:    May 16, 2025 Time:    10:30 a.m. Ctrm:    8A Judge:    Hon. Josephine L. Staton |
| *Defendants.* | |

**TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 16, 2025, at 10:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Josephine L. Staton, Courtroom 8A, of the above-captioned court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (together, "JPMorgan") will, and hereby do, move for an order dismissing this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1) based on Plaintiff Daniel J. Wright's ("Plaintiff") lack of standing and Federal Rule of Civil Procedure 12(b)(6) based on Plaintiff's failure to state a claim upon which relief can be granted. This Motion is based upon (i) this Notice of Motion; (ii) the Memorandum of Points and Authorities and Request for Judicial Notice attached hereto; (iii) the concurrently filed Declaration of Jeremy P. Blumenfeld and all exhibits thereto; (iv) all other pleadings and papers on file with the Court in this matter; and (v) such further evidence and argument as the Court may permit.

This Motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on March 10, 2025. Plaintiff did not consent to the relief sought.

**RELIEF SOUGHT**

JPMorgan seeks an order dismissing this lawsuit in its entirety, without leave to amend, pursuant to Rule 12(b)(1) and Rule 12(b)(6).

Dated: March 20, 2025

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld (*pro hac vice*)
Gina McGuire (*pro hac vice*)
Mayra Negrete, Bar No. 333491

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

    I.    The JPMorgan Chase 401(k) Savings Plan ................................. 2

    II.   Plan Administrative Expenses .................................................... 3

    III.  Plan Forfeitures .......................................................................... 3

    IV.  Plaintiff's Complaint .................................................................. 4

ARGUMENT ...................................................................................................... 4

    I.    Dismissal Is Warranted Because Plaintiff Lacks Article III Standing ...................................................................................... 4

         A.   Plaintiff Does Not Allege That He Personally Suffered Any Injury .......................................................................... 5

         B.   Plaintiff Also Cannot Satisfy The Requirement Of Redressability .................................................................... 7

    II.   The Complaint Should Be Dismissed Because Plaintiff's Claims Fail As A Matter Of Law ............................................... 8

         A.   ERISA Does Not Require Increasing Plaintiff's Benefits .......... 8

         B.   Plaintiff's Claims Are Foreclosed By Decades Of Settled Law That Permits Using Forfeitures To Fund Benefits To Other Participants ...................................................... 11

         C.   The Complaint Fails To State A Claim For Breach Of Fiduciary Duty ............................................................ 14

              1.   Plaintiff Does Not Challenge Fiduciary Conduct .......... 14

              2.   Plaintiff Fails To Plausibly Allege Breach Of Fiduciary Duty ................................................... 16

         D.   Plaintiff Fails To State A Violation Of The Anti-Inurement Clause .......................................................... 18

         E.   Plaintiff Does Not Allege A Prohibited Transaction ................. 19

         F.   Plaintiff Fails To Plausibly Allege A "Failure To Monitor" ...................................................................... 20

CONCLUSION ................................................................................................ 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

i

CASE No. 2:25-CV-00525-JLS-JC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Brain*,
    910 F.3d 502 (9th Cir. 2018) ................................................................. 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 14

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
    953 F.2d 587 (11th Cir. 1992) ............................................................... 19

*Barragan v. Honeywell Int'l Inc.*,
    2024 WL 5165330 (D.N.J. Dec. 19, 2024) .................................... 2, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 8

*Commodity Futures Trading Comm'n v. Schor*,
    478 U.S. 833 (1986) ............................................................................... 13

*Curtiss-Wright v. Schoonejongen*,
    514 U.S. 73 (1995) ................................................................................... 9

*Dimou v. Thermo Fisher Sci. Inc.*,
    2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ............................*passim*

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015) ............................................................................... 13

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ................................................................................. 8

*First Nat'l Bank of Chi. v. Comptroller of Currency*,
    956 F.2d 1360 (7th Cir. 1992) ............................................................... 16

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) ................................................................. 7

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984) ................................................................. 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ..............................................................................9, 15, 18

*Hutchins v. HP Inc.*,
   2025 WL 404594 (N.D. Cal. Feb. 5, 2025)..................................................*passim*

*Hutchins v. HP Inc.*,
   737 F. Supp. 3d 851 (N.D. Cal. 2024).........................................................2, 17, 19

*In re LinkedIn ERISA Litig.*,
   2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ......................................................6

*Liao v. Fisher Asset Mgmt., LLC*,
   2024 WL 4351869 (N.D. Cal. Sept. 30, 2024) ....................................................20

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ..........................................................................................20

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) .............................................................................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................7

*Mathews v. Chevron Corp.*,
   362 F.3d 1172 (9th Cir. 2004)...........................................................................15

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ..........................................................................................14

*Naylor v. BAE Sys., Inc.*,
   2024 WL 4112322 (E.D. Va. Sept. 5, 2024)..............................................*passim*

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ..........................................................................................15

*Perez-Cruet v. Qualcomm Inc.*,
   2024 WL 2702207 (S.D. Cal. May 24, 2024) ....................................................10

*Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*,
   445 F. Supp. 3d 695 (C.D. Cal. 2020)...............................................................21

*Rodriguez v. Intuit Inc.*,
   744 F. Supp. 3d 935 (N.D. Cal. 2024)...............................................................10

*Sabana v. CoreLogic, Inc.*,
   2024 WL 755723 (C.D. Cal. Jan. 26, 2024) .................................................. 5, 6

*Smith v. UnitedHealth Grp., Inc.*,
   106 F.4th 809 (8th Cir. 2024) ......................................................................... 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ....................................................................................... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ....................................................................................... 2

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ................................................................................. 5, 7, 8

*U.S. Airways v. McCutcheon*,
   569 U.S. 88 (2013) ......................................................................................... 6

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ....................................................................... 8

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ............................................................. 9, 15, 16

**Statutes**

26 U.S.C.
   § 401 ............................................................................................................ 11
   § 401(a)(2) ................................................................................................... 13
   § 401(a)(8) ................................................................................................... 12

29 U.S.C.
   § 1002(34) ..................................................................................................... 2
   § 1103(c)(1) ............................................................................................. 4, 18
   § 1104(a)(1)(A) ............................................................................................. 4
   § 1104(a)(1)(B) ......................................................................................... 4, 17
   § 1104(a)(1)(D) ............................................................................. 6, 9, 16, 17
   § 1106(a) ........................................................................................................ 4
   § 1106(b) ........................................................................................................ 4
   § 1106(b)(1) ................................................................................................. 19
   § 1109 ............................................................................................................ 7
   § 1144(d) ..................................................................................................... 16

Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986) ..................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

iv

CASE NO. 2:25-CV-00525-JLS-JC

**Other Authorities**

26 C.F.R. § 1.401-7(a) .......................................................................... 11

83 Fed. Reg. 34469 (July 20, 2018) ....................................................... 12

88 Fed. Reg. 12282 (Feb. 27, 2023) ....................................................... 13

DOL Adv. Op. 79-90A, 1979 WL 7027, at *3 (Dec. 28, 1979).............. 16

Fed. R. Civ. P.
    12 ..................................................................................................... 14
    12(b)(1) ........................................................................................... 1, 4
    12(b)(6) ........................................................................................... 1, 8

H.R. Rep. No. 99-841, Vol. II (1986)...................................................... 12

Ret. News for Employers, Vol. 7, Spring 2010,
    https://www.irs.gov/pub/irs-pdf/p4278.pdf....................................... 12

Rev. Ruling 67-68, 1967-1 C.B. 86 ......................................................... 11

Rev. Ruling 71-313, 1971-2 C.B. 203 ..................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

v

CASE NO. 2:25-CV-00525-JLS-JC

1

## INTRODUCTION

2      Plaintiff has sued Defendants JPMorgan Chase & Co. and JPMorgan Chase

3   Bank, N.A. (together, "JPMorgan") over the JPMorgan Chase 401(k) Savings Plan

4   (the "Plan"). Plaintiff asserts that JPMorgan should have used "forfeitures"—that is,

5   JPMorgan's monetary contributions to the Plan for other employees who

6   subsequently left JPMorgan before the contributions vested—for Plaintiff's own

7   personal benefit.

8      Plaintiff's Complaint fails because JPMorgan did exactly what the Plan terms

9   require. The Plan here states that forfeitures must be used either (i) to reduce future

10  employer contributions or (ii) to pay "the Bank's [JPMorgan's] share of Plan

11  expenses not paid directly by the Plan." The Complaint alleges that JPMorgan did

12  just that. Nevertheless, Plaintiff alleges that JPMorgan should have used forfeitures

13  to pay *his* share of Plan expenses or just given him the forfeitures from other

14  employees' accounts. These allegations do not state a claim, and Plaintiff's

15  Complaint should be dismissed for two overarching reasons.

16     **First**, the Complaint does not—and cannot—allege that Plaintiff suffered any

17  Article III injury in fact from JPMorgan's use of forfeitures. Plaintiff does not claim

18  he ever received lesser contributions than the Plan promised, or that JPMorgan's

19  actions reduced the value of his Plan account. Plaintiff therefore lacks Article III

20  standing, and the Court should dismiss his Complaint under Federal Rule of Civil

21  Procedure 12(b)(1) for lack of subject matter jurisdiction.

22     **Second**, even if Plaintiff had standing, the Complaint does not state a claim

23  and, therefore, should be dismissed under Rule 12(b)(6). Each of Plaintiff's claims

24  presuppose he has an individual right to forfeitures. But the Plan document does not

25  promise any such entitlement. Nor does the Plan allow forfeitures to be used to pay

26  *Plaintiff's* share of Plan expenses. To the contrary, it *requires* that such assets "shall"

27  be used by JPMorgan to "reduce future contributions of the Bank or the Bank's

28  [JPMorgan's] share of Plan expenses not paid directly by the Plan." And ERISA itself

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1

CASE NO. 2:25-CV-00525-JLS-JC

is intended only to ensure that employees receive the benefits promised by their employers; it does not create additional benefits or sanction windfalls. By Plaintiff's own allegations, JPMorgan complied with the Plan terms, ensured participants received all benefits the Plan promised them, and acted consistently with decades of settled law and Treasury regulations in doing so.

Courts have consistently dismissed nearly identical "forfeiture" challenges under ERISA. *See Hutchins v. HP Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024) ("*Hutchins I*") (dismissing initial complaint with leave to amend); *Hutchins v. HP Inc.*, 2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ("*Hutchins II*") (dismissing amended complaint without leave to amend); *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330 (D.N.J. Dec. 19, 2024); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024).

Plaintiff received all the employer contributions to his account that he was promised under the Plan terms. He is not entitled to more. The Complaint should be dismissed.

## FACTUAL BACKGROUND

### I.    The JPMorgan Chase 401(k) Savings Plan

The Plan is a defined contribution, individual account plan under ERISA. Compl. ¶ 6; *see also* 29 U.S.C. § 1002(34). Each participant's benefit is based upon the assets in his or her account, including gains or losses. *Id.*; Compl. ¶ 13. JPMorgan is the Plan's sponsor, while its Benefits Executive is the designated Plan "administrator." *See* Decl. of Jeremy P. Blumenfeld ("Blumenfeld Decl.") Ex. A, JPMorgan Chase 401(k) Savings Plan (Effective Jan. 1, 2021) §§ 1.1, 1.10, 12.3.[1]

---

[1] The Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). At the Rule 12 stage, courts in similar ERISA cases routinely consider the written plan document, as it is central to the claims and subject to judicial notice. *See, e.g.*, *Hutchins II*, 2025 WL 404594, at *3.

The Plan helps employees save for retirement through two main funding sources: (1) voluntary deferrals, withheld from a participant's wages; and (2) employer contributions. Compl. ¶ 14; Plan §§ 4.4, 4.11, 4.14. JPMorgan provides three primary types of employer contributions: (1) matching contributions to eligible participants who elect to contribute to the Plan, *see* Plan § 4.4; (2) annual "Automatic Pay Credit Contributions" for eligible employees, *id.* § 4.14; and (3) "Discretionary Contributions" to eligible employees, *id*. § 4.11.

## II.    Plan Administrative Expenses

Like any 401(k) plan, the Plan incurs expenses. The Plan states that each investment option in the Plan will have its own expenses, and that participants pay their share of recordkeeping and administrative fees. Specifically, each investment option shall be charged "with the expense of investment management, transactional costs, the cost of system changes, and certain administrative expenses" associated with that option. *Id*. § 6.9. And "[t]o the extent permitted by law, recordkeeping fees, the cost of system changes and the administrative costs of the Plan may be charged to the Accounts of each Participant and Former Participant." *Id.*

## III.    Plan Forfeitures

Because employer contributions vest after three years of service, Plan participants who leave JPMorgan sooner forfeit those contributions. Compl. ¶ 15; Plan § 10.6. When this occurs, the Plan mandates how such forfeitures "shall" be used: "Forfeitures arising under the Plan shall reduce future contributions of the Bank [JPMorgan] or the Bank's [JPMorgan's] share of Plan expenses not paid directly by the Plan." Compl. ¶ 16; Plan § 4.6.[2]

---

[2] The Plan administrative expense (§ 6.9) and forfeiture (§ 4.6) provisions were the same in the 2016 Plan document. *See* Blumenfeld Decl. Ex. B, JPMorgan Chase 401(k) Savings Plan (Effective Jan. 1, 2016) §§ 4.6, 6.9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS                    3                    CASE NO. 2:25-CV-00525-JLS-JC

**IV.    Plaintiff's Complaint**

The Complaint alleges that, from 2020 through 2024, JPMorgan used forfeitures to reduce its employer contributions and/or to reduce Plan expenses "that would have otherwise been paid directly by [JPMorgan]." Compl. ¶ 17 (citation omitted). That is, Plaintiff claims that contributions JPMorgan made in prior years for employees who later forfeited those amounts either were used to pay JPMorgan's share of certain Plan expenses (2023 only) or were reallocated to provide benefits to other employees and therefore "reduce future employer contributions." *Id.* ¶¶ 16, 17.

Plaintiff's theory is that the Plan was required to simply *give* participants the forfeitures or use forfeitures to pay *participants'* share of Plan expenses. *Id.* ¶ 18. But the Complaint is most notable for what it does not allege. Plaintiff does not allege he or any other Plan participant ever failed to receive all contributions the Plan provides; that is, there is no dispute that all contributions the Plan promised to Plaintiff were credited to his account. Plaintiff does not allege that he forfeited anything himself. And Plaintiff does not allege that the Plan terms required, or even permitted, forfeitures to be used the way he says they should have been used.

Nevertheless, the Complaint asserts four causes of action, all based on the use of forfeitures. Count I claims JPMorgan breached ERISA's fiduciary duties of loyalty and prudence, 29 U.S.C. §§ 1104(a)(1)(A)-(B). Count II alleges JPMorgan violated ERISA's "anti-inurement" provision, 29 U.S.C. § 1103(c)(1), by supposedly using Plan assets to "benefit" JPMorgan. Count III claims that JPMorgan's use of forfeitures was a "prohibited transaction" under ERISA, 29 U.S.C. § 1106(a)-(b). And Count IV claims that JPMorgan violated its "duty to monitor" other Plan fiduciaries.

## ARGUMENT

**I.    Dismissal Is Warranted Because Plaintiff Lacks Article III Standing**

Plaintiff does not have constitutional standing, meaning the Court lacks jurisdiction and should dismiss the Complaint under Rule 12(b)(1). "To establish

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

4

CASE NO. 2:25-CV-00525-JLS-JC

standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "There is no ERISA exception to Article III." *Id.* at 547. "[A]t the pleading stage," as the party invoking federal jurisdiction, the plaintiff bears the burden to "clearly . . . allege facts demonstrating" each of these three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

Plaintiff lacks Article III standing because he does not allege that he personally suffered any injury from JPMorgan's alleged use of forfeitures, nor does he allege that any such injury would be redressable through his claims. He thus cannot satisfy two of the three fundamental elements needed to carry his burden of establishing constitutional standing.

### A.    Plaintiff Does Not Allege That He Personally Suffered Any Injury

As noted, Plaintiff does not allege that he was deprived of *any* benefits the Plan promised him, nor that his individual account was reduced. Instead, he asserts broadly that JPMorgan should have used forfeitures "for the benefit of Plan participants." Compl. ¶ 16. But this is not a particularized "injury" to Plaintiff sufficient to confer Article III standing. It is not enough to allege that a fiduciary violated ERISA or that a plan suffered a loss generally. *Thole*, 590 U.S. at 542-43. Instead, Plaintiff must identify a concrete injury to *his own* Plan account. *Id.*; *accord Sabana v. CoreLogic, Inc.*, 2024 WL 755723, at *3 (C.D. Cal. Jan. 26, 2024) ("[I]n no event may a plaintiff bring an ERISA claim without demonstrating . . . concrete and individual harm.").

In *Thole*, for instance, the Supreme Court held that plaintiffs lacked Article III standing to challenge the misuse of plan assets where they did not suffer injury because they received all benefits they were "legally and contractually entitled to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

5

CASE NO. 2:25-CV-00525-JLS-JC

receive" under the plan. 590 U.S. at 540-41. Similarly, in *Sabana*, Judge Vera of this Court dismissed the plaintiff's ERISA breach of fiduciary duty claim, which was premised on the theory that the defendant offered underperforming funds, on grounds that the plaintiff had not invested in the challenged funds and thus lacked Article III standing because he was not "injured by the misconduct he alleges." 2024 WL 755723, at *1 (dismissing claims with prejudice); *accord In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (dismissing ERISA breach of fiduciary duty claims for lack of Article III standing where plaintiffs did not allege they personally invested in the challenged funds or that their accounts paid allegedly excessive fees).

The principle uniting these (and other) decisions is that a plan participant does not allege a sufficient Article III injury where, despite receiving all benefits promised under the plan (and thus not being injured), he claims an ERISA violation impeded his ability to obtain something *more* than the plan committed to provide. *See Smith v. UnitedHealth Grp., Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (plaintiffs lacked standing to challenge practice of offsetting benefit payments with prior overpayments, where plaintiffs were "not contractually entitled to" their preferred approach). This is because, as explained below, *infra* § II(A), the written plan document defines the benefits an employer commits to provide and governs participants' contractual entitlement. *See U.S. Airways v. McCutcheon*, 569 U.S. 88, 100-01 (2013) ("The statutory scheme . . . is built around reliance on the face of written plan documents.") (citation omitted).

Here, the Complaint alleges no basis for finding Plaintiff has any personal entitlement to unallocated forfeitures in the Plan. The Plan itself certainly provides no such right, as it requires using forfeitures to reduce JPMorgan's contributions or to reduce *JPMorgan's* share (not Plaintiff's share) of Plan expenses—exactly how Plaintiff alleges JPMorgan used them. *See* 29 U.S.C. § 1104(a)(1)(D) (plan fiduciaries have a duty to administer a plan in compliance with the written plan

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES    6    CASE NO. 2:25-CV-00525-JLS-JC
IN SUPPORT OF MOTION TO DISMISS

document). And Plaintiff does not allege he ever paid any expenses, that he did not receive the employer contributions promised him, or that his benefit was reduced in any other way.

In short, the Plan does not authorize JPMorgan to give Plaintiff more than the Plan provides or to pay Plaintiff's share of Plan expenses. *See Hutchins II*, 2025 WL 404594, at \*4-5 (granting dismissal where plaintiff's assertion of rights to forfeitures not set forth in the plan would require the court "to stretch the fiduciary duties of loyalty and prudence beyond the law and to create benefits beyond what was promised in the Plan itself"); *Naylor*, 2024 WL 4112322, at \*6 (finding that "nothing in" the plan "would allow forfeitures to be allocated to individual participant accounts" or to grant "a windfall to Plan participants"). As such, Plaintiff does not allege an Article III injury in fact sufficient to confer standing.

## B.    Plaintiff Also Cannot Satisfy The Requirement Of Redressability

Even if Plaintiff could establish some Article III injury (and he cannot), it would not be redressable, meaning Plaintiff would still lack constitutional standing. *Lujan*, 504 U.S. at 560-61. As noted, the Plan requires using forfeitures as a source of JPMorgan's contributions or to reduce JPMorgan's share of Plan expenses. It does not allow redistributing those amounts to increase Plaintiff's benefits or to pay Plaintiff's share of expenses. And again, Plaintiff does not allege that he even paid any expenses. Therefore, even if JPMorgan were ordered to pay additional money into the Plan, *see* 29 U.S.C. § 1109 and Compl., Request for Relief, that money could only be used for one of the two purposes expressly allowed by the Plan—funding JPMorgan's future contributions or paying JPMorgan's share of Plan expenses— neither of which would result in Plaintiff receiving any additional funds. In other words, even if Plaintiff were to ultimately prevail in this litigation, he would receive "not a penny more." *Thole*, 590 U.S. at 541; *see also Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (there is "no redressability, and thus no standing" under ERISA where even a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

7

CASE NO. 2:25-CV-00525-JLS-JC

favorable judicial outcome would not "inure to the benefit of" the plaintiff).[3] This self-evident absence of redressability further deprives Plaintiff of constitutional standing.

Because Plaintiff has not alleged any particularized nor redressable injury, he has "no concrete stake in this dispute" and lacks Article III standing. *Thole*, 590 U.S. at 547.

## II.    The Complaint Should Be Dismissed Because Plaintiff's Claims Fail As A Matter Of Law

The Complaint also fails to state a claim and, therefore, should be dismissed under Rule 12(b)(6). To survive a motion to dismiss, Plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Whether a complaint states a plausible claim is a context-specific inquiry, and doing so requires more than conclusory allegations and assertions devoid of factual support. *Id.* The Court is not bound to accept legal conclusions as true. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). Moreover, the Supreme Court has emphasized that, particularly in ERISA class actions, a Rule 12(b)(6) motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

### A.    ERISA Does Not Require Increasing Plaintiff's Benefits

Before turning to each cause of action, Plaintiff's central theory—that JPMorgan was required to pay more toward his retirement than the Plan provides—contradicts fundamental ERISA principles. Congress enacted ERISA to ensure

---

[3] This is a critical distinction from other cases finding plaintiffs had Article III standing in similar ERISA forfeiture cases, because those plans at least allowed forfeitures to be used to pay participant expenses. *See, e.g.*, *Dimou*, 2024 WL 4508450, at *5.

retiring employees get the benefits their employers promised them. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999). But Congress did not legislate what those benefits must be or require plans to pay more than the plan terms provide.

The written plan document thus defines the parties' rights and obligations. *See Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("A written plan is to be required in order that every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan.") (citation omitted). The relevant question, therefore, is whether Plaintiff received the benefits the Plan promised him.

As noted, Plaintiff does not claim he or any other Plan participant received less than the full employer contributions the Plan promised. Nor does he allege JPMorgan violated the Plan's terms by using the forfeitures in the way it did. Nonetheless, Plaintiff claims that ERISA effectively creates an entitlement to *more* than the Plan promised, by forcing JPMorgan to give him a portion of other employees' unallocated forfeitures or to pay his share of Plan expenses. *See* Compl. ¶¶ 16, 18.

This theory is inconsistent with ERISA and binding precedent. "ERISA requires fiduciaries to comply with a plan as written," except where the plan is "inconsistent with ERISA." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *accord* 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciaries to comply with the plan documents "insofar as such documents . . . are consistent with the provisions of [ERISA]"). Here, Plaintiff does not allege that any Plan provision violates ERISA. Nor could he, as the Plan's use of forfeitures is consistent with decades of settled law, as explained below.

A growing consensus of district courts have rejected virtually identical forfeiture-based claims on the grounds that ERISA does not compel a plan sponsor to use forfeitures to award participants additional benefits beyond what they were promised under the plan. *See, e.g.*, *Hutchins II*, 2025 WL 404594, at *4 (dismissing ERISA forfeiture claims without leave to amend where plaintiff sought to use

forfeitures to "create an additional benefit" that was "at odds with the . . . Plan documents themselves"); *Naylor*, 2024 WL 4112322, at *6 (granting dismissal where plaintiff's forfeiture theory was "contrary to the terms of the Plan," would have resulted in a "windfall to Plan participants," and had been "uniformly rejected by the courts"); *Barragan*, 2024 WL 5165330, at *6 (granting dismissal where the "forfeited amounts . . . are used to satisfy [defendant]'s obligations according to the Plan's language"); *Dimou*, 2024 WL 4508450, at *9 (following *Hutchins I* and granting dismissal on grounds that ERISA does not impose "an unqualified duty to pay administrative expenses, especially when the plan document does not create an entitlement to such benefits").[4] This fundamental flaw in Plaintiff's theory undermines each of his specific claims.

---

[4] The few courts that have reached a contrary conclusion did so on readily distinguishable facts and with materially different plan language. For example, plaintiffs alleged that the defendants were violating the plan terms by using forfeitures to offset employer contributions, or delinquent employer contributions, which the plan did not allow. *See Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024) ("Ms. Rodriguez has therefore plausibly alleged that the Plan did not authorize the specific decisions made by Intuit with respect to the use of forfeited Matching Contributions."); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024) (denying motion to dismiss where complaint alleged that forfeitures were used to offset delinquent contributions in direct contravention of plan language). In fact, the plaintiff in *Qualcomm* specifically distinguished *Hutchins* on that basis. *See* Opp'n to Mot. for Recons. and/or Interlocutory Appeal at 9, *Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890 (S.D. Cal. July 22, 2024), Dkt. 24 ("In evaluating whether it is unlawful under ERISA to use forfeitures in defined contribution plans to reduce employer contributions, the *Hutchins [II]* Order reasoned that using forfeitures to offset 'outstanding and unpaid amounts owed,' such as '*delinquent*' employer contributions, would be problematic . . . . In the present case, the Complaint does allege that forfeitures were used to offset 'Company *delinquent* contributions to the Plan.'") (emphasis in original).

**B.**    **Plaintiff's Claims Are Foreclosed By Decades Of Settled Law That
Permits Using Forfeitures To Fund Benefits To Other Participants**

Longstanding regulatory guidance also forecloses Plaintiff's claims. In short, the law has always recognized what is really just common sense: forfeited contributions are still *employer* contributions, made at a prior time but no longer allocated to any individual participant. This lengthy history is important in evaluating Plaintiff's newfound legal theory—and it only confirms that there is nothing improper about using forfeitures to fund other benefits called for by the Plan.

Like all tax-qualified retirement plans, the Plan must comply with numerous requirements in the Internal Revenue Code ("Tax Code"). Adherence to these "qualification requirements" ensures both the deductibility of employer contributions and the tax deferral of employer and employee contributions (and earnings). *See* 26 U.S.C. § 401. From the outset, ERISA and the Tax Code have been intertwined; indeed, ERISA amended the Tax Code and is the source of many of its tax qualification requirements.[5]

Treasury regulations—since even before ERISA was enacted—have expressly authorized using forfeitures to offset future employer contributions. Specifically, 26 C.F.R. § 1.401-7(a) requires that forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan." *Id.*; *see also* Rev. Ruling 67-68, 1967-1 C.B. 86. This is what Plaintiff alleges the Plan does here. Consistent with § 1.401-7(a), both the Treasury Department and Congress have made clear over the ensuing six decades that a defined contribution plan may use forfeitures to provide benefits to other participants (thereby reducing employer contributions). For example, a 1971 IRS Revenue Ruling explained that "profit-sharing and stock bonus plans"—the Plan is both—"may provide that forfeitures be used *to reduce employer*

---

[5]    *See* History of EBSA and ERISA, Dep't of Labor, https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/history-of-ebsa-and-erisa.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

11

CASE NO. 2:25-CV-00525-JLS-JC

*contributions* that otherwise would be required under the contribution formula contained in the plan." Rev. Ruling 71-313, 1971-2 C.B. 203 (1971) (emphasis added). The IRS issued similar guidance in 2010, advising that forfeitures "may be used to pay for a plan's administrative expenses and/or to reduce employer contributions."[6] Other regulations likewise confirm that forfeitures may be allocated to future employer contributions. For example, in 2018, the Treasury Department issued final regulations that "permit forfeitures of prior contributions to be used to fund" qualified matching and non-elective contributions. 83 Fed. Reg. 34469, 34470 (July 20, 2018).

Congress has confirmed the Treasury Department's understanding about the use of forfeitures. For example, the Tax Reform Act of 1986 amended 26 U.S.C. § 401(a)(8)—which prohibits using forfeitures to "increase the benefits any employee would otherwise receive"—to clarify that this applies only to defined benefit plans. *See* Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986). In explaining the bill, however, the House Conference Report made clear that under existing law, "forfeitures arising in any defined contribution plan can be either (1) reallocated to the accounts of other participants in a nondiscriminatory fashion, or (2) used to reduce future employer contributions or administrative costs." H.R. Rep. No. 99-841, Vol. II at 442 (1986). Indeed, the Treasury Department recently recounted this history in proposing a new regulation in 2023,[7] highlighting Congress's intent in 1986 to

---

[6] *See* 2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., at 4-5 (Ret. News for Employers, Vol. 7, Spring 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf.

[7] JPMorgan recognizes that this 2023 regulation is a proposed regulation and does not have the same force as a final regulation. But the fact that the existing regulation and the new proposed regulation both allow using forfeitures in the same way the Plan does here confirms that the statutory provisions on which Plaintiff relies—which do not even *mention* forfeitures—cannot be stretched to prohibit what Congress and the Treasury Department have long understood to be lawful practices.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

12

CASE NO. 2:25-CV-00525-JLS-JC

"provide[] uniform rules regarding the use of forfeitures under any defined contribution plan." 88 Fed. Reg. 12282, 12283 (Feb. 27, 2023).

The proposed new Treasury regulation further clarifies the permitted use of forfeitures in defined contribution plans by reaffirming the same understanding the Treasury Department and Congress have expressed for more than sixty years. This regulation requires a defined contribution plan to provide that forfeitures "will be used" for one or more of three lawful purposes: "(i) To pay plan administrative expenses; (ii) To reduce employer contributions under the plan; or (iii) To increase benefits in other participants' accounts in accordance with plan terms." 88 Fed. Reg. at 12285. This proposed regulation, like the existing one, explicitly authorizes the very conduct Plaintiff challenges. To accept his theory, therefore, would mean the Treasury Department continues to authorize a practice that constitutes a *per se* violation of ERISA—and, for that matter, would also violate the similar "exclusive benefit" requirement in the Tax Code itself, *see* 26 U.S.C. § 401(a)(2). This is not plausible.

Consistent with this background, neither Congress nor the IRS has *ever* sought to prohibit employers from using forfeitures to offset future contributions. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) ("[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.") (quotations and citation omitted).

In contrast, *none* of the ERISA provisions the Complaint cites say anything about forfeitures. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (a statute's silence should be construed "as exactly that: silence"). Plaintiff relies instead on generic concepts under ERISA's fiduciary provisions, which address conduct distinct from that challenged here. It is implausible to suggest that statutory provisions that do not even mention forfeitures nevertheless prohibit

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

13

CASE No. 2:25-CV-00525-JLS-JC

using them exactly as longstanding regulations, legislative history, and other guidance allow. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261-62 (1993) (observing that "vague notions of a statute's basic purpose are [] inadequate to overcome the words of its text," which is "especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful and competing interests—not all in favor of potential plaintiffs") (quotations and citation omitted).

For these reasons, several courts have cited the regulatory framework in rejecting Plaintiff's same theory. *See Hutchins II*, 2025 WL 404594, at *4 (the proposed Treasury regulation "helps to illustrate the difficulty with Plaintiff's theory: Plaintiff effectively asserts that the general fiduciary duty provision of ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution plans"); *Dimou*, 2024 WL 4508450, at *9 (the Treasury regulations "are relevant authorities in evaluating the plausibility of the plaintiff's claims").

Rule 12 requires the Court to "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These guideposts do not support Plaintiff's theory. His claims have no legal foundation and should be dismissed.

## C.    The Complaint Fails To State A Claim For Breach Of Fiduciary Duty

Turning to Plaintiff's specific claims, Count I alleges that JPMorgan breached ERISA's duties of prudence and loyalty by not redistributing forfeitures to Plaintiff's account or paying Plaintiff's share of Plan expenses. Compl. ¶¶ 32-38. This claim fails because Plaintiff does not plausibly allege that JPMorgan (i) acted as a fiduciary in allocating forfeitures, or (ii) breached any fiduciary duty in adhering to the Plan terms and long-settled law.

### 1.    Plaintiff Does Not Challenge Fiduciary Conduct

The "threshold question" for any alleged fiduciary breach is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS                    14                    CASE NO. 2:25-CV-00525-JLS-JC

when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *see also Acosta v. Brain*, 910 F.3d 502, 517-18 (9th Cir. 2018). The Complaint cannot overcome this threshold requirement.

An employer's decision to offer a plan—as well as related decisions over its terms, how it is funded, and whether and to what extent to make employer contributions—are all corporate decisions made in a settlor capacity, not as a plan fiduciary. *See Hughes Aircraft*, 525 U.S. at 444 ("decision[s] regarding the form or structure of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts" are settlor functions); *Wright*, 360 F.3d at 1102 (decisions of "plan design" are "settlor function[s]," not "fiduciary function[s]"). By contrast, one acts as a fiduciary when he or she "exercises any discretionary authority" over the "management" or "administration" of a plan. *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (quoting 29 U.S.C. § 1002(21)(A)). One who merely enforces plan terms without the need to exercise discretion does not act as a fiduciary. Therefore, when a plan mandates a particular course of action, merely declining to deviate from its terms does not constitute an ERISA violation. *See Naylor*, 2024 WL 4112322, at *6-7 (dismissing forfeiture claims because "the Plan *requires*, without any discretion reserved to the Defendant, that forfeitures be directed towards . . . offsetting contributions").

Here, the Plan authorizes only two options for allocating forfeitures. Section 4.6 mandates that JPMorgan "shall" use forfeitures to "reduce future contributions" or to "reduce . . . the Bank's [JPMorgan's] share of Plan expenses not paid directly by the Plan." By Plaintiff's own allegations, therefore, JPMorgan complied with the Plan and lacked discretion to deviate from it. *See id.* at *7 (when an employer adheres to plan terms mandating the use of forfeitures, "it [does] so in its capacity as a 'settlor,' which does not give rise to fiduciary duties under ERISA"). By claiming JPMorgan should have disregarded the Plan's terms and reallocated forfeitures for his own personal benefit, Plaintiff is ultimately challenging the Plan's *design*—a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

15

CASE NO. 2:25-CV-00525-JLS-JC

1  quintessential settlor function—not any action taken by JPMorgan as Plan fiduciary.

2  The Complaint thus fails to plausibly allege that JPMorgan acted as a fiduciary with

3  respect to forfeitures.

4        **2.**      **Plaintiff Fails To Plausibly Allege Breach Of Fiduciary Duty**

5        Even if Plaintiff challenged fiduciary conduct, Count I still fails because the

6  Complaint does not allege a plausible breach of duty. While Count I asserts that

7  JPMorgan breached ERISA's duties of loyalty and prudence, the supposed "breach"

8  is only that JPMorgan used forfeitures exactly as the Plan required and settled law

9  allowed. Thus, although Plaintiff claims JPMorgan violated ERISA by using

10 "forfeited fund assets to reduce its own employer contributions," Compl. ¶ 18, there

11 is no support in the law or the Plan for finding that ERISA required JPMorgan to use

12 forfeitures in the way Plaintiff prefers.

13       To the contrary, ERISA requires that a fiduciary discharge its duties "in

14 accordance with the documents and instruments governing the plan insofar as such

15 documents and instruments are consistent" with the statute. 29 U.S.C.

16 § 1104(a)(1)(D). A fiduciary does not breach its duties by acting in compliance with

17 the lawful terms of a plan document, *see Wright*, 360 F.3d at 1100, and Plaintiff has

18 not alleged the Plan itself contains unlawful terms.

19       Further, Section 514(d) of ERISA states that "[n]othing [in ERISA] shall be

20 construed to alter, amend, modify, invalidate, impair, or supersede any law of the

21 United States . . . or any rule or regulation issued under any such law." 29 U.S.C.

22 § 1144(d). As such, "[t]here can be no violation of ERISA itself" by complying with

23 other federal regulations. *First Nat'l Bank of Chi. v. Comptroller of Currency*, 956

24 F.2d 1360, 1368 (7th Cir. 1992). The Department of Labor has agreed, including in

25 the context of Treasury regulations promulgated under the Tax Code. *See, e.g.*, DOL

26 Adv. Op. 79-90A, 1979 WL 7027, at *3 (Dec. 28, 1979) (advising that "pursuant to

27 ERISA section 514(d)," fiduciaries that comply with a section of the Tax Code are

28 not "in violation of ERISA sections 403(c)(1) and 404(a)(1)").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES    16    CASE NO. 2:25-CV-00525-JLS-JC
IN SUPPORT OF MOTION TO DISMISS

Here, the Plan expressly authorizes using forfeitures to reduce JPMorgan's future contributions or JPMorgan's share of expenses not paid directly by the Plan. *See* Plan § 4.6. The Complaint does not (and cannot) allege that this or any other Plan term is "[in]consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D). As such, this case is like *Hutchins* and *Naylor*. *See Hutchins II*, 2025 WL 404594, at *6 ("Since the . . . Complaint indicates only that [defendant] complied with the Plan's lawful terms and provided Plaintiff and other participants with their benefits due, Plaintiff's claim that [defendant] violated its fiduciary duty . . . remains implausible.") (alterations and citation omitted); *Naylor*, 2024 WL 4112322, at *6 (finding plaintiff's position that defendant was "required by ERISA to disregard the terms of the Plan" to create a "windfall to Plan participants" had been "uniformly rejected by the courts"). Plaintiff's claims fail accordingly.

Even in cases where a plan gives fiduciaries a choice to use forfeitures to pay a participant's share of expenses, numerous courts have dismissed similar claims because ERISA's fiduciary duties do not require "maximiz[ing] pecuniary benefits in favor of plan beneficiaries," and "it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits." *Hutchins I*, 737 F. Supp. 3d at 863 (citing *Foltz v. U.S. News & World Report, Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989)); *see also Dimou*, 2024 WL 4508450, at *9 (finding no plausible fiduciary breach where neither ERISA nor the plan document "create an entitlement" to additional benefits using forfeitures); *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants" by paying plan expenses).

Moreover, the Complaint also fails to allege a plausible breach under the "circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). Here, those circumstances included not only the Plan, which JPMorgan was required to follow, but decades of settled legal support, including the regulations and guidance cited above. Plaintiff ignores all of this, claiming instead that ERISA effectively allows

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS                    17                    CASE NO. 2:25-CV-00525-JLS-JC

only one choice: dole out forfeitures to him and others, granting them greater benefits than promised under the Plan. But courts have rejected this theory, finding that "the plan fiduciary is not authorized to provide Plan participants with *more* benefits than the Plan documents set out." *Hutchins II*, 2025 WL 404594, at *6; *accord Dimou*, 2024 WL 4508450, at *9.

In short, the Complaint relies on the false premise that using amounts forfeited by unvested Plan participants to reduce employer contributions somehow creates a windfall for JPMorgan. But this is simply wrong. Forfeitures constitute money JPMorgan already contributed for participants who, as it turned out, did not vest in those contributions and thus never became entitled to them. Plaintiff does not (and cannot) allege any facts to support a plausible claim that it is "disloyal" or imprudent for a fiduciary to adhere to the Plan terms and decades of legal guidance. Nothing in the Complaint suggests a fiduciary breach, and the Court should dismiss Count I.

### D.    Plaintiff Fails To State A Violation Of The Anti-Inurement Clause

The Court should also dismiss Count II, which alleges that using forfeitures to reduce JPMorgan's contributions "caused the assets of the Plan to inure to the benefit of the employer in violation of" ERISA. Compl. ¶ 42. ERISA's anti-inurement provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1).

Here, forfeitures are not removed from the Plan, but instead remain in the Plan and are reallocated to other accounts. Compl. ¶¶ 15-16. In other words, the Plan uses forfeitures for "providing benefits to participants," and paying certain Plan expenses, exactly as ERISA requires. 29 U.S.C. § 1103(c)(1). As the Supreme Court put it, where plaintiffs "do not allege that [defendant] used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries," there is no ERISA violation. *Hughes Aircraft*, 525 U.S. at 443.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

18

CASE NO. 2:25-CV-00525-JLS-JC

That is precisely the case here. Plaintiff "do[es] not allege that [JPMorgan] used any" assets of the Plan for any "purpose other than to pay its obligations" to participants. *Id.* The fact that JPMorgan might contribute less additional money to the Plan is immaterial, so long as the assets *within the Plan* were used to pay benefits or Plan expenses. *See id.* (rejecting anti-inurement claim where employer directed surplus assets toward funding a new benefit in the same plan).

ERISA does not prohibit actions that are otherwise lawful simply because they may benefit the employer indirectly. *Id*. at 445-46. Rather, ERISA's anti-inurement provision focuses on the removal of assets from a plan. *See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) (anti-inurement claims require "removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants"). Using plan assets to offset future contributions does not remove assets from the Plan. *See Holliday v. Xerox Corp.*, 732 F.2d 548, 550-51 (6th Cir. 1984) (no violation when an employer transferred funds from one account to offset required contributions in another, even though it "reduc[ed] the amount of money" the employer had to contribute overall).

At least three courts have rejected nearly identical claims under ERISA's anti-inurement provision. *See Hutchins I*, 737 F. Supp. 3d at 864-67 (surveying case law and finding no anti-inurement violation where "the forfeited amounts remain part of the Plan's trust fund and are used to benefit Plan beneficiaries"); *Naylor*, 2024 WL 4112322, at *7 (dismissing anti-inurement claim where plan allowed using forfeitures "to supplement future employer contributions"); *Dimou*, 2024 WL 4508450, at *10 (same). This Court should similarly dismiss Count II.

### E.    Plaintiff Does Not Allege A Prohibited Transaction

In Count III, Plaintiff recharacterizes his theory as an alleged "prohibited transaction," which requires him to allege the occurrence of "[t]ransactions between a plan and fiduciary," in which a fiduciary "deal[s] with assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

19

CASE NO. 2:25-CV-00525-JLS-JC

To start, this claim fails because the Complaint does not challenge fiduciary conduct, *supra* § II(C)(1), which itself compels dismissal. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (fiduciary status is a prerequisite for a prohibited transaction claim); *Naylor*, 2024 WL 4112322, at *7 ("[I]n the absence of a predicate fiduciary act, there is not a basis for concluding there was a prohibited transaction.") (citation omitted).

Regardless, Count III fails because Plaintiff alleges no "transaction" within the meaning of ERISA. He alleges only that forfeitures remain in the Plan and are reallocated to other participant accounts. Compl. ¶¶ 47-48. Such intra-Plan transfers from one participant's account to another are neither "prohibited" nor a "transaction." Congress intended for ERISA to reach "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Spink*, 517 U.S. at 893. By contrast, the mere "payment of benefits" under a plan is not a "transaction," even if an employer might obtain "incidental and thus legitimate benefits" by doing so. *Id.* at 893-95.

Here, too, several courts have already rejected nearly identical claims, finding that reallocating forfeitures to provide benefits to others is not a "transaction" under ERISA. *See Hutchins II*, 2025 WL 404594, at *8; *Dimou*, 2024 WL 4508450, at *11; *Liao v. Fisher Asset Mgmt., LLC*, 2024 WL 4351869, at *6 (N.D. Cal. Sept. 30, 2024) ("[R]eallocation of funds within the Plan in accordance with the Plan's terms . . . is not a prohibited transaction."). As in these cases, Plaintiff alleges no actionable "transaction"—much less one prohibited by ERISA—and the Court should dismiss Count III.

### F.    Plaintiff Fails To Plausibly Allege A "Failure To Monitor"

Finally, Count IV claims that JPMorgan breached a "duty to monitor" other Plan fiduciaries. Compl. ¶¶ 50-54. This claim is derivative of Plaintiff's others—and because they fail, Count IV does, too. *See Dimou*, 2024 WL 4508450, at *11.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS                    20                    CASE No. 2:25-CV-00525-JLS-JC

1

## CONCLUSION

2
For the reasons above, Plaintiff lacks Article III standing and fails to state a

3
claim upon which relief can be granted. The Court should dismiss the Complaint

4
without leave to amend.[8]

5

6
Dated: March 20, 2025                    Respectfully submitted,

7
Mayra Negrete, Bar No. 333491            By: */s/ Jeremy P. Blumenfeld*

8
mayra.negrete@morganlewis.com            Jeremy P. Blumenfeld (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**          jeremy.blumenfeld@morganlewis.com

9
600 Anton Boulevard, Suite 300           **MORGAN, LEWIS & BOCKIUS LLP**

10
Costa Mesa, CA 92626-7653                2222 Market Street
Tel.: (714) 830-0600                     Philadelphia, PA 19103

11
Fax: (714) 830-0700                      Tel.: (215) 963-5000
                                         Fax: (215) 963-5001

12

13
                                         Gina McGuire (*pro hac vice*)

14
                                         gina.mcguire@morganlewis.com
                                         **MORGAN, LEWIS & BOCKIUS LLP**

15
                                         101 Park Avenue

16
                                         New York, NY 10178-0060
                                         Tel.: (212) 309-6000

17
                                         Fax: (212) 309-6001

18
*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

19

20

21

22

23

24

25
[8] No amendment can salvage the Complaint, as Plaintiff's theory is flawed as a matter
of law and the terms of the Plan. *See Quezambra v. United Domestic Workers of Am.*

26
*AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 706 (C.D. Cal. 2020) (Staton, J.) (dismissal

27
without leave to amend is warranted where the "claims fail as a matter of law and not
due to insufficient factual allegations"), *aff'd*, 2023 WL 4398498 (9th Cir. July 7,

28
2023).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES       21       CASE NO. 2:25-CV-00525-JLS-JC
IN SUPPORT OF MOTION TO DISMISS

1

**Local Rule 11-6.2 Certification**

2

The undersigned, counsel of record for Defendants JPMorgan Chase & Co.

3

and JPMorgan Chase Bank, N.A, certifies that this brief contains 6,758 words, which

4

complies with the word limit of L.R. 11-6.1.

5

6

Dated: March 20, 2025                    By: */s/ Jeremy P. Blumenfeld*

7

Jeremy P. Blumenfeld

8

9

10

11

12

**Certificate of Service**

13

I certify that on March 20, 2025, a true and correct copy of the foregoing

14

document and all exhibits and attachments thereto were filed electronically through

15

the Court's CM/ECF electronic filing system.

16

17

Dated: March 20, 2025                    By: */s/ Jeremy P. Blumenfeld*

18

Jeremy P. Blumenfeld

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

CASE NO. 2:25-CV-00525-JLS-JC