1  Joshua H. Haffner, SBN 188652
2    (jhh@haffnerlawyers.com)
   Alfredo Torrijos, SBN 222458
3    (at@haffnerlawyers.com)
   Vahan Mikayelyan, SBN 337023
4    (vh@haffnerlawyers.com)
5  **HAFFNER LAW PC**
   15260 Ventura Blvd., Suite 1520
6  Sherman Oaks, CA 91403
7  Tel: (213) 514-5681 / Fax: (213) 514-5682
8
   Shaun C. Setareh, SBN 204514
9    (shaun@setarehlaw.com)
   Thomas A. Segal, SBN 222791
10    (thomas@setarehlaw.com)
11  **SETAREH LAW GROUP**
   9665 Wilshire Blvd., Suite 430
12  Beverly Hills, California 90212
   Tel: (310) 888-7771 / Fax: (310) 888-0109
13
14
15  *Attorneys for Plaintiff Daniel J. Wright*
16            **UNITED STATES DISTRICT COURT**
17            **CENTRAL DISTRICT OF CALIFORNIA**
18  DANIEL J. WRIGHT, individually and as        Case No. 2:25-cv-00525-JLS-JC
   representative of a class of participants and
19  beneficiaries and on behalf of the            HON. JOSEPHINE L. STATON
   JPMorgan Chase 401K Savings Plan,
20                                                **PLAINTIFF'S AMENDED**
              Plaintiff,                          **OPPOSITION TO THE MOTION TO**
21                                                **DISMISS BY DEFENDANTS**
         v.
22
   JPMORGAN CHASE & CO.;                          Hearing:
23  JPMORGAN CHASE BANK, N.A.; and                Date: May 30, 2025
   DOES 1-10, inclusive                           Time: 10:30 a.m.
24                                                Courtroom: 8A
              Defendants.
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................1

    A.    The Plan's Establishment and Funding ...................................................2

    B.    Participant Vesting and Use of Forfeitures ............................................2

    C.    Plan Committees and Their Discretionary Authority.............................3

    D.    Defendants' Misuse of Forfeited Assets ................................................3

    E.    Harm to the Plan and Participants ..........................................................4

III.    ARGUMENT ....................................................................................................4

    A.    Plaintiff's Allegations Demonstrate a Concrete, Particularized Injury and Redressability, Satisfying Article III Standing Requirements .............4

        1.    Plaintiff Has Suffered a Concrete Injury in Fact........................4

        2.    Plaintiff's Injury Is Fairly Traceable to Defendants' Conduct .................5

        3.    Plaintiff's Injury Is Redressable by the Requested Relief .........................6

    B.    Plaintiff States a Valid ERISA Breach of Fiduciary Duty Claim .........6

        1.    The Plan Grants JPMorgan Discretion on How to Apply Forfeitures. .......7

        2.    JPMorgan Designed the Plans to Give Itself Discretion for Actions It Took as an Administrator and Fiduciary of the Plans....................12

        3.    JPMorgan Exercised Fiduciary Discretion by Choosing to Offset Employer Contributions Instead of Paying Plan Expenses.......................14

        4.    JPMorgan Breached Its Fiduciary Duty. .................................................18

        5.    Plaintiff's Theory of Liability is Fully Consistent with Regulatory and Legislative Guidance. ................................................19

    C.    Plaintiff Has Properly Pled a Claim for Prohibited Transactions .........21

    D.    Plaintiff Has Properly Pled a Claim for Failure to Monitor..................22

    E.    Plaintiff Properly Pled an Anti-Inurement Claim ................................22

IV.    CONCLUSION ...............................................................................................23

# TABLE OF AUTHORITIES

## **Cases**

*Bafford v. Northrop Grumman Corp.*
994 F.3d 1020 (9th Cir. 2021) ................................................................. 6

*Barker v. Am. Mobil Power Corp.*
64 F.3d 1397 (9th Cir. 1995) ................................................................... 7

*Concha v. London*
62 F.3d 1493 (9th Cir. 1995) ................................................................... 7

*Fifth Third Bancorp v. Dudenhoeffer*
573 U.S. 409, 419 (2014) ........................................................... 7, 18, 23

*Gilliam v. Nevada Power Co.*
488 F.3d 1189 (9th Cir. 2007) ................................................................. 8

*Hughes Aircraft Co. v. Jacobson*
525 U.S. 432 (1999) ..................................................................... 12, 15, 16

*Hutchins v. HP Inc.*
2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ................................... 15, 16, 17

*Hutchins v. HP Inc.*
737 F.Supp.3d 851 (N.D. Cal. 2024) ..................................................... 20

*Johnson v. Couturier*
572 F.3d 1067 (9th Cir. 2009) ................................................................. 7

LaRue v. DeWolff, Boberg & Assocs., Inc.
552 U.S. 248 (2008) ................................................................................ 6

*Lockheed Corp. v. Spink*
517 U.S. 882 (1996) ........................................................................ 12, 16

*McManus v. Clorox Company*
2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ..................................... 7, 13

*McManus v. Clorox Company*
2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ......................... 7, 17, 18, 21

*Naylor v. BAE Sys., Inc.*
2024 WL 4112322 (E.D. Va. Sept. 5, 2024) .......................................... 14

*Perez-Cruet v. Qualcomm Inc.*
2024 WL 2702207 (S.D. Cal. May 24, 2024) ................................. passim

*Randall on behalf of Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*
2024 WL 713997 (D. Minn. 2024) ................................................. 21, 22

*Reg'l Med. Ctr. of San Jose v. WH Adm'rs, Inc.*
2021 WL 4481667 (N.D. Cal. Sept. 30, 2021) ....................................... 8

— ii —

*Richardson v. Pension Plan of Bethlehem Steel Corp.*
    112 F.3d 982 (9th Cir. 1997) ................................................................. 8

*Rodriguez v. Intuit Inc.*
    744 F.Supp.3d 935 (N.D. Cal. 2024) ........................................... passim

*Solis v. Webb*
    931 F.Supp.2d 936 (N.D. Cal. 2012) ................................................. 22

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ........................................................................... 5

*Terraza v. Safeway Inc.*
    241 F.Supp.3d 1057 (N.D. Cal. 2017) ................................................ 7


**<u>Statutes</u>**

29 U.S. Code § 1106(a) ........................................................................ 21

29 U.S. Code § 1106(b) ........................................................................ 21

29 U.S.C. § 1002(2)(A) .......................................................................... 2

29 U.S.C. § 1002(21)(A) ....................................................................... 16

29 U.S.C. § 1002(34) .......................................................................... 2, 4

29 U.S.C. § 1103(a) ............................................................................... 2

29 U.S.C. § 1103(c)(1) ......................................................................... 22

29 U.S.C. § 1104(a) .................................................................. 18, 19, 23

# I.    INTRODUCTION

Plaintiff Daniel J. Wright ("Plaintiff") brings this action on behalf of the JPMorgan Chase 401(k) Savings Plan ("the Plan") and a putative class of similarly situated participants and beneficiaries, asserting that defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan" or "Defendants") have improperly diverted forfeited Plan assets exclusively to offset employer contributions rather than appropriately allocating those forfeitures to defray Plan administrative expenses or increase participant account balances. The Plan, established as a defined contribution pension benefit plan under ERISA, explicitly permits the discretionary use of forfeitures to either reduce employer contributions or offset Plan expenses. Despite this clear discretion, JPMorgan consistently elected to apply forfeitures solely to reduce future employer contributions, as evidenced by the significant annual forfeiture amounts detailed in recent Form 5500 filings. This consistent and exclusive diversion of forfeitures benefits JPMorgan directly at the expense of Plan participants, reducing the net assets available within the Plan and thereby harming participants' retirement benefits.

Defendants argue that Plaintiff lacks Article III standing, contending there is no concrete injury or redressable harm. This argument ignores that every dollar diverted from the Plan to reduce JPMorgan's employer contribution obligations is a direct economic loss to participants, who otherwise bear Plan administrative costs or suffer reduced account balances. Plaintiff's injury is not only concrete but also directly traceable to Defendants' fiduciary choices and fully redressable through equitable remedies sought under ERISA, which would restore improperly diverted assets to participants' accounts.

Moreover, contrary to Defendants' assertion, Plaintiff has adequately pled claims for breach of fiduciary duty under ERISA. By choosing to offset employer contributions with forfeitures, JPMorgan exercised fiduciary discretion explicitly granted by the Plan document itself, triggering ERISA's stringent fiduciary standards.

Accordingly, Plaintiff respectfully submits that Defendants' motion to dismiss should be denied in its entirety, as Plaintiff has sufficiently established Article III standing,

alleged concrete harm traceable to Defendants' fiduciary breaches, and presented claims fully consistent with controlling ERISA jurisprudence.

## II. STATEMENT OF RELEVANT FACTS

### A.    The Plan's Establishment and Funding

Plaintiff brings this action on behalf of the JPMorgan Chase 401(k) Savings Plan ("the Plan"), a defined contribution, individual account employee pension benefit plan within the meaning of 29 U.S.C. §§ 1002(2)(A) and 1002(34). [Doc. 1 ("Complaint"), ¶ 6.]  Defendant JPMorgan Chase & Co. sponsors the Plan, which is funded through both participant contributions and employer contributions. [*Id.*, ¶¶ 6, 13.] Consistent with 29 U.S.C. § 1103(a), the Plan's assets are held in a trust fund, meaning that once employee and employer contributions are deposited, they become Plan assets. [*Id.*, ¶ 12; Doc. 30-1 ("2021 Plan"), § 13.1, at ECF p. 79.]

Under Sections 4.1 and 4.4 of the Plan, participants contribute a portion of their compensation through payroll deductions, and JPMorgan Chase makes matching and discretionary contributions on their behalf. [Doc. 30-1, §§ 4.1, 4.4, ECF pp. 32, 34.]

### B.    Participant Vesting and Use of Forfeitures

Participants are immediately vested in the portion of their accounts attributable to their own contributions and the earnings on those contributions. [Complaint, ¶ 14.]  By contrast, the Plan requires three years of service for participants to become fully vested in employer contributions. [Complaint, ¶ 14; Doc. 30-1 ("2021 Plan"), § 7.2, ECF p. 48.]  If a participant separates from employment before meeting this vesting requirement, the unvested portion of the employer contributions reverts to the Plan as a forfeiture. [Complaint, ¶ 15; Doc. 30-1, § 10.6, ECF p. 66.]

According to Section 4.6 of the Plan, forfeited contributions may be used to "reduce future contributions [of either the Participating Company or, if none are anticipated, the Bank] or [either the Participating Company's of the Bank's] share of Plan expenses not paid directly by the Plan." [Doc. 30-1, § 4.6, ECF p. 29 (emphasis added).] Section 4.6 reads:

Forfeitures    arising    under    the    Plan    shall    reduce    future

contributions of the Participating Company from which the forfeited contribution originated ***or such Participating Company's share of Plan expenses not paid directly by the Plan***, but, if no future contributions are anticipated to be made by such Participating Company, such forfeitures shall reduce future contributions of the Bank or the Bank's share of Plan expenses not paid directly by the Plan.

For the avoidance of doubt, forfeitures may be used by a Participating Company or the Bank (as applicable) towards Qualified Non-elective Contributions and contributions described in Appendix I.1(h) that are intended to qualify under Code Section 401(k)(3)(D).

[Doc. 30-1, § 4.6, ECF p. 29 (emphasis added).][1]

## C.    Plan Committees and Their Discretionary Authority

JPMorgan oversees the Plan's governance and delegates fiduciary and administrative responsibilities to various committees, including the Employee Plans Investment Committee ("EPIC") and the Plan Administrator. [Complaint, ¶ 9; Doc. 30-1, § 12.2, at ECF pp. 66-68.]  Section 12.1 grants the Plan Administrator broad discretionary authority to administer the Plan. [*Id.*]  Under Section 12.10, administrative expenses of the Plan, are to be paid from Plan assets unless the expenses are to be paid by the Bank or other Employer. [Doc. 30-1, § 12.10, ECF p. 78.]

## D.    Defendants' Misuse of Forfeited Assets

The complaint alleges that Defendants consistently misused nearly all forfeited employer contributions exclusively to reduce future employer contributions rather than applying those forfeitures to pay Plan expenses under Section 4.6 for the benefit of participants. [Complaint, ¶¶ 16-19.]  Specifically, recent Form 5500 filings confirm significant forfeiture amounts used solely to offset employer contributions:

- $9,201,591 (2020)
- $7,493,078 (2021)

---

[1]  Section 4.6 of the 2021 Plan and 2016 Plan are the same except the 2021 Plan adds the second sentence quoted above.  [See Doc. 30-1 ("2021 Plan"), § 4.6, at ECF p. 29; Doc. 30-1 ("2016 Plan"), § 4.6, at ECF p. 182.]

1        • $12,952,282 (2022)

2        • $14,976,321 (2023)

3 [Complaint, ¶ 17.]

4     This allocation method improperly benefits the employer at the expense of Plan

5 participants, who would otherwise benefit from reduced administrative fees or increased

6 allocations to their accounts. [Complaint, ¶¶ 16, 18.]

7     **E.**    **Harm to the Plan and Participants**

8     Defendants' practice reduces the overall assets available within the Plan, directly

9 harming participants by not using forfeitures to alleviate Plan administrative costs or to

10 increase participant account balances. This practice conflicts with the express terms of

11 Section 4.6, explicitly stating forfeitures may be used to pay Plan expenses. [Doc. 30-1

12 ("2021 Plan"), § 4.6, ECF p. 36.] Given that forfeitures originate from employer

13 contributions already held in the trust, they constitute "Plan assets" subject to strict

14 fiduciary standards under ERISA. [Complaint, ¶¶ 12, 16, 18.]

15 **III.**   **ARGUMENT**

16     **A.**    **Plaintiff's Allegations Demonstrate a Concrete, Particularized Injury**

17           **and Redressability, Satisfying Article III Standing Requirements**

18     JPMorgan contends that Plaintiff lacks Article III standing, arguing Plaintiff does

19 not allege any injury resulting from JPMorgan's use of forfeitures nor an injury that is

20 redressable by the claims asserted. [Doc. 30 ("Motion") at ECF pp. 11-15.] JPMorgan's

21 argument overlooks critical factual allegations in the Complaint and misconstrues the

22 operation of the Plan regarding forfeitures and Plan expenses.

23       *1.*    *Plaintiff Has Suffered a Concrete Injury in Fact*

24     In a defined contribution plan such as the JPMorgan Chase 401(k) Savings Plan ("the

25 Plan"), each participant's retirement benefit directly depends on the overall assets allocated

26 to their individual account. [Complaint, ¶¶ 6, 13; 29 U.S.C. § 1002(34).] When Defendants

27 allocate forfeitures exclusively to reduce JPMorgan's employer contribution obligations

28 rather than applying these assets to defray legitimate Plan expenses, they deprive the

1  Plan—and thus its participants—of funds that could otherwise reduce administrative costs

2  borne by the participants or increase their account balances. [Complaint, ¶¶ 16-18.]

3  Defendants inaccurately suggest that Plaintiff has not suffered a concrete harm

4  because Plaintiff purportedly received all contributions promised under the Plan. [Doc. 30,

5  ECF p. 12.]  However, this argument disregards the clear economic injury to Plaintiff and

6  other participants caused by the unnecessary reduction in net Plan assets available due to

7  administrative expenses that could have been mitigated through forfeitures. Plan Section

8  6.9 explicitly authorizes charging participants' accounts for certain administrative and

9  investment management expenses, directly impacting their investment returns and account

10  balances. [Doc. 30-1 ("2021 Plan"), § 6.9, ECF p. 47.] Every dollar of forfeitures diverted

11  to offset JPMorgan's contribution obligations rather than to cover administrative expenses

12  represents an economic loss—a direct and concrete injury—to Plaintiff and other

13  participants, meeting Article III's injury-in-fact requirement. See *Spokeo, Inc. v. Robins*,

14  578 U.S. 330, 339 (2016) (economic injuries, even if small, establish concrete injury for

15  standing purposes).

16  Plaintiff alleges explicitly that these forfeitures could and should have been used to

17  pay "reasonable expenses of the Plan" as permitted by the Plan itself. [Doc. 30-1 ("2021

18  Plan"), § 4.6, ECF p. 36; Complaint, ¶¶ 16-18.]  By failing to allocate forfeitures to defray

19  administrative costs charged to participants' accounts, Plaintiff has suffered a concrete

20  economic injury in the form of reduced investment returns and diminished account

21  balances.

22  2.  *Plaintiff's Injury Is Fairly Traceable to Defendants' Conduct*

23  Plaintiff's concrete economic injury is also directly attributable to Defendants'

24  conduct. Standing requires only that Plaintiff's injury be fairly traceable to the challenged

25  conduct. *Spokeo*, 578 U.S. at 338.   Here, Plaintiff's reduced investment returns and

26  diminished account balances result directly from Defendants' decision to use forfeitures

27  solely to reduce JPMorgan's employer contributions rather than defraying administrative

28  expenses under Section 4.6 of the Plan.  Had Defendants used forfeitures to reduce Plan

1  expenses, Plaintiff's and other participants' net returns would have been higher. This causal

2  relationship between Defendants' improper allocation of forfeitures and Plaintiff's

3  economic harm is clearly established and satisfies Article III's causation requirement.

4          *3.    Plaintiff's Injury Is Redressable by the Requested Relief*

5          Plaintiff's injury can unquestionably be redressed by the relief sought in this action.

6  Plaintiff seeks an order requiring Defendants to restore the Plan's losses resulting from

7  their improper allocation of forfeitures and directing future forfeitures to be used

8  appropriately for the benefit of Plan participants or to defray Plan expenses, in compliance

9  with ERISA. [Complaint, ¶¶ 19, Prayer for Relief.] If Defendants are compelled to

10  reallocate forfeitures to cover administrative expenses or to enhance participant accounts

11  directly, Plaintiff's and other participants' net returns will increase, directly remedying

12  their diminished account balances and economic injury.

13          Contrary to Defendants' assertion that Plaintiff would not receive any tangible

14  benefit (Doc. 30, ECF p. 14), restoring losses to the Plan or redirecting future forfeitures

15  to legitimate Plan expenses will unquestionably enhance participants' account values. Such

16  relief directly addresses the injury suffered, making Plaintiff's harm redressable under

17  established Supreme Court precedent. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S.

18  248, 256 (2008) (affirming that section 502(a)(2) authorizes relief to participants whose

19  individual accounts are diminished by fiduciary breaches).

20          Accordingly, Plaintiff has adequately alleged a concrete, particularized injury that is

21  fairly traceable to Defendants' actions and redressable by the requested relief, thus

22  satisfying all requirements for Article III standing.

23  **B.    Plaintiff States a Valid ERISA Breach of Fiduciary Duty Claim**

24          "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege

25  that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and

26  (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020,

27  1026 (9th Cir. 2021). ERISA requires fiduciaries to discharge their duties "solely in the

28  interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA also

"imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014) (citation omitted); 29 U.S.C. § 1104(a)(1)(B). These duties require that fiduciaries "act in the best interests of the plan participants and beneficiaries." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). They are "the highest known to the law." *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009).

"To state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.,* 241 F.Supp.3d 1057, 1070 (N.D. Cal. 2017). This is because, "[w]here," as here, "a fiduciary exercises discretionary control over a plan, and assumes the responsibilities that this control entails, the victim of his misconduct will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). The allegations are sufficient so long as "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F.Supp.3d at 1070.

### 1. The Plan Grants JPMorgan Discretion on How to Apply Forfeitures.

*McManus v. Clorox Company* ("*Clorox I*" and "*Clorox II*"), *Rodriguez v. Intuit Inc.*, and *Perez-Cruet v. Qualcomm Incorporated*—involved plans explicitly granting fiduciaries discretion to allocate forfeitures either to offset employer contributions or to defray plan expenses. For example, the *Clorox* court specifically emphasized that when plan documents confer discretion upon fiduciaries, the fiduciaries must exercise that discretion prudently and loyally under ERISA, even if their ultimate decisions are consistent with the explicit terms of the plan document. *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ("*Clorox I*"); *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025) ("*Clorox II*"). Similarly, in *Rodriguez*, the court held that fiduciaries breached their ERISA

duties by consistently reallocating forfeitures to reduce future employer contributions without adequately investigating or prioritizing participant interests. *Rodriguez v. Intuit Inc.*, 744 F.Supp.3d 935 (N.D. Cal. 2024).  Moreover, *Perez-Cruet* explicitly recognized that using forfeited contributions to offset employer contributions could constitute prohibited self-dealing and a violation of ERISA's anti-inurement provisions, as forfeitures are considered plan assets. *Perez-Cruet v. Qualcomm Inc.*, No. 23-CV-1890-BEN (MMP), 2024 WL 2702207 (S.D. Cal. May 24, 2024).

Thus, a central question presented in JPMorgan's motion is whether the JPMorgan 401(k) plan at issue here provided fiduciaries discretion to use forfeitures either to offset employer contributions or to pay down plan expenses. JPMorgan, in an attempt to align itself with favorable authority, claims no such discretion existed under its plan.

Resolving this dispute requires interpreting the language of the Plan, guided by established principles of ERISA interpretation.  ERISA plans are contracts, interpreted according to contract principles informed by federal policies and objectives. See *Reg'l Med. Ctr. of San Jose v. WH Adm'rs, Inc.*, No. 5:17-cv-03357-EJD, 2021 WL 4481667, at *5 (N.D. Cal. Sept. 30, 2021) (quoting *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007)). Courts must interpret ERISA plan terms in their ordinary and popular sense, as understood by a person of average intelligence and experience, considering explicit language and contextual intent. *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997).  Furthermore, courts construe each provision in the context of the entire document to ensure no provision is rendered meaningless. *Id.*

JPMorgan's interpretation hinges on Section 4.6 of the Plan, which states:

> Forfeitures arising under the Plan shall reduce future contributions of the Participating Company from which the forfeited contribution originated ***or such*** <ins>***Participating Company's share***</ins> ***of Plan expenses*** not paid directly by the Plan, but, ***if no future contributions are anticipated to be made by such Participating Company***, such forfeitures shall reduce

1    *future contributions of the Bank or the <u>Bank's</u> <u>share</u> of Plan*
2    *expenses not paid directly by the Plan*.

3    For the avoidance of doubt, forfeitures may be used by a
4    Participating Company or the Bank (as applicable) towards
5    Qualified Non-elective Contributions and contributions
6    described in Appendix I.1(h) that are intended to qualify under
7    Code Section 401(k)(3)(D).

8    [Doc. 30-1 ("2021 Plan"), § 4.6, at ECF p. 29 (emphasis added).][2]

9    Section 4.6 of the Plan undeniably provides discretion on the use of forfeited funds:
10   "such forfeitures shall reduce future contributions of the Bank *or* the Bank's share of Plan
11   expenses not paid directly by the Plan." [Doc. 30-1, § 4.6, at ECF p. 29 (emphasis added).]
12   This language explicitly provides JPMorgan with two distinct alternatives, confirming that
13   JPMorgan indeed has discretion.  JPMorgan attempts to limit its discretion by suggesting
14   that the expenses referenced in Section 4.6 are restricted solely to JPMorgan's internal
15   expenses because Section 4.6 references "the Bank's [JPMorgan's] *share* of Plan expenses
16   not paid directly by the Plan." This, according to JPMorgan, distinguishes its share of Plan
17   expenses from general Plan expenses (which presumably are solely Plan participant
18   expenses).  However, JPMorgan's interpretation is implausible and strained. The term
19   "share" here plainly refers ***not*** to an allocation between JPMorgan ("the Bank") and Plan
20   participants, ***but rather*** between JPMorgan and a "Participating Company."  The very
21   language of Section 4.6 requires this reading since if references both "*Participating*
22   *Company's share* of Plan expenses" and "*Bank's share* of Plan expenses." [Doc. 30-1, §
23   4.6, at ECF p. 29.]

24   Further undermining JPMorgan's reading of Section 4.6 is the fact that the Plan

25

26   [2] As noted above in Footnote 1, section 4.6 of the 2021 Plan and 2016 Plan are
27   identical except that the 2021 Plan adds the second paragraph, which begins with "For
     the avoidance of doubt…" [See Doc. 30-1 ("2021 Plan"), § 4.6, at ECF p. 29; Doc. 30-1
28   ("2016 Plan"), § 4.6, at ECF p. 182.]

**PLAINTIFF'S AMENDED OPPOSITION TO THE MOTION TO DISMISS**
**BY DEFENDANTS (CASE NO. 2:25-CV-00525-JLS-JC)**

1   never discusses what constitutes the "Bank's share of Plan expenses" from other Plan

2   expenses. Section 6.9 explicitly allows for a wide array of administrative expenses—

3   including investment management, transactional costs, system changes, and certain

4   administrative costs—to be charged directly to participants' accounts, unless the Bank

5   elects otherwise. [Doc. 30-1, § 6.9, at ECF p. 47.] Specifically, Section 6.9 provides:

6              To the extent permitted by law, recordkeeping fees, the cost of

7              system changes and the administrative costs of the Plan may be

8              charged to the Accounts of each Participant and Former

9              Participant.  Notwithstanding the above, *the Bank may at **its***

10             ***discretion*** *elect to pay, or cause to be paid by the Participating*

11             *Companies, any of such costs, fees and expenses*.  In accordance

12             with Section 4.6, forfeitures arising under the Plan may reduce

13             the share of Plan expenses of a Participating Company from

14             which the forfeited contribution originated not paid directly by

15             the Plan, but if no future contributions are anticipated to be made

16             by such Participating Company, such forfeitures may reduce the

17             Bank's share of Plan expenses not paid directly by the Plan.

18  [Doc. 30-1, § 6.9, at ECF p. 47 (emphasis added).]

19          In other words, when JPMorgan drafted the Plans, it gave itself discretion when it

20  was going to act as a fiduciary (administrator) of the Plans to allocate administrative

21  expenses to itself or Participating Companies.  When read in conjunction, Sections 4.6 and

22  6.9 show that forfeitures may indeed be utilized to offset these very administrative costs

23  otherwise borne directly by Plan participants.

24          Furthermore, Section 12.10 of the Plan confirms that administrative expenses

25  incurred in connection with the management and administration of the Plan, including

26  fiduciary expenses such as legal and accounting fees, are generally chargeable to Plan

27  assets. [Doc. 30-1 ("2021 Plan"), § 12.10, at ECF p. 78 ("Any Named Fiduciary may defray

28  the reasonable expenses that it may incur in the administration of the Plan from the assets

– 10 –

of the Plan unless such expenses shall be paid by the Bank or other Employer.").]  These are precisely the type of administrative expenses that Plaintiff contends should have been offset by forfeitures rather than being allocated to participants' accounts, demonstrating the broad category of administrative expenses contemplated by the Plan.

Thus, the authorization in Section 4.6 to use forfeitures to reduce JPMorgan's share of Plan expenses logically includes the same administrative expenses explicitly authorized under Sections 6.9 and 12.10. JPMorgan's attempt to narrowly classify permissible expenses as solely its internal costs ignores the broader framework clearly established by the Plan document, wherein administrative expenses routinely charged to participant accounts could, and should, be mitigated through the application of forfeitures.

Even assuming arguendo that the Court accepts Defendants' overly restrictive interpretation—that only JPMorgan's own share of internal expenses may be covered—dismissal at this pleading stage would remain inappropriate. Defendants cannot conclusively establish from the pleadings alone that no eligible administrative expenses contemplated under Sections 6.9 or 12.10 have occurred. Indeed, the Plan explicitly contemplates and permits a wide range of administrative costs, including legal, accounting, transactional, and system-related expenses, which regularly occur in plan administration. Nothing in the current record conclusively demonstrates that the Plan did not incur these administrative expenses or that forfeitures could not have appropriately offset them.

At this stage, the Court must accept Plaintiff's factual allegations that eligible administrative expenses exist, and Defendants' assertion to the contrary merely highlights a factual dispute requiring further discovery. Whether or not administrative expenses have occurred and could have been offset by forfeitures is not resolvable on the pleadings alone. Consequently, even under Defendants' restrictive interpretation of Section 4.6, dismissal is improper. Plaintiff is entitled to discovery to establish evidence of administrative expenses that forfeitures could—and should—have offset, consistent with ERISA's fiduciary standards.

2.   *JPMorgan Designed the Plans to Give Itself Discretion for Actions It Took as an Administrator and Fiduciary of the Plans.*

As noted above, Section 6.9 of the Plan provides that JPMorgan has the "discretion [to] elect to pay, or cause to be paid by the Participating Companies, any of such costs, fees and expenses [i.e., recordkeeping fees, the cost of system changes and the administrative costs of the Plan]." [Doc. 30-1 ("2021 Plan"), § 6.9, at ECF p. 47.]  Thus, it is JPMorgan that decides, in its discretion, what are "Participating Company's share of Plan expenses not paid directly by the Plan" and "the Bank's [i.e., JPMorgan's] share of Plan expenses not paid directly by the Plan" that Section 4.6 provides may be paid by forfeitures. [*Id.*, § 4.6, at ECF p. 29 (emphasis added).]

Under ERISA, courts distinguish between actions taken by an employer in its capacity as a settlor and actions taken in its capacity as a fiduciary (administrator), and only the latter triggers fiduciary duties.

A settlor function involves decisions related to the formation, design, amendment, or termination of the ERISA plan itself.  When acting as a settlor, an employer is free to define the structure of the plan and is not subject to fiduciary standards.  Thus, when an employer adopts, modifies, or discontinues an employee benefit plan—decisions analogous to a trust creator setting the terms of a trust—it does not owe fiduciary duties to plan participants. See *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries," but rather "are analogous to the settlors of a trust."); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999).

In contrast, an employer acts in a fiduciary administrative capacity when it exercises discretion or control regarding plan management, administration, or the handling of plan assets.  Fiduciary actions involve decision-making about how the plan operates day-to-day, including choices regarding investments, plan expenses, allocation of forfeitures, claims administration, and communications with participants.  Fiduciaries are bound by ERISA's stringent standards of loyalty and prudence, requiring that they act solely in the best

interests of the plan participants and beneficiaries, and avoid conflicts of interest. See *Clorox I*, 2024 WL 4944363, at \*4 (finding allocation of forfeitures was fiduciary in nature); *Intuit*, *supra*, 744 F.Supp.3d at 943 ("Any decisions relating to the management of plan assets should cautiously be presumed to be fiduciary in nature."); *Qualcomm*, *supra*, 2024 WL 2702207, at \*3 (holding that choosing how to use forfeitures was subject to fiduciary obligations).

This critical distinction means that when an employer is merely designing or amending a plan's terms—settlor activities—it enjoys significant latitude.  However, once it moves beyond design and engages in discretionary plan management—such as choosing how expenses and forfeited assets will be allocated—it must satisfy fiduciary standards, subjecting it to ERISA's fiduciary duties and potential liability for breaching those duties. *Clorox I*, 2024 WL 4944363, at \*4; *Intuit*, 744 F.Supp.3d at 943.

When exercising the discretion that it gave itself in Section 4.6 (on how to use forfeited funds) and Section 6.9 (on how to allocated expenses), JPMorgan was not only bound by the fiduciary duties imposed by ERISA, it was bound to exercise that discretion in conformity with other provisions of the Plans, which indicate a preference that Plan assets be used for the payment of expenses.

For example, Section 13.3 provides in relevant part that: "No part of the Trust (***except such part as may be used for the payment of expenses of the Plan or the Trust***) may be used for, or diverted to, any purpose other than for the exclusive benefit of Participants, Former Participants and Beneficiaries, except to the extent permitted by ERISA." [Doc. 30-1 ("2021 Plan"), § 13.3, at ECF p. 79 (emphasis added).]  Likewise, Section 14.1 of the Plan provides in relevant part: "The Board may amend the Plan at any time and any amendment may be made retroactive; provided, however, that […] it shall be impossible under any provision of the Plan or any amendment thereto for any interest, ownership or control over the assets of the Trust Fund to vest in the Bank, as employer, or in any other Participating Company, or for any part of the Trust Fund (***other than such part as may be required to pay taxes, administration expenses or fees***) to be used for or

1  diverted to purposes other than for the exclusive benefit of Participants or Former
2  Participants or their Beneficiaries[….]" [*Id.*, at § 14.1, at ECF p. 80 (emphasis added).]

3          3.      *JPMorgan Exercised Fiduciary Discretion by Choosing to Offset*
4                  *Employer Contributions Instead of Paying Plan Expenses.*

5        The JPMorgan Chase 401(k) Savings Plan does not mandate the exclusive use of
6  forfeitures to reduce future employer contributions; instead, it explicitly provides that
7  forfeitures may also be used to pay Plan expenses. This critical distinction undermines
8  JPMorgan's reliance on authority such as *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322
9  (E.D. Va. Sept. 5, 2024). In *Naylor*, the court dismissed the plaintiff's claims because the
10  plan document explicitly required forfeitures be used solely to offset employer
11  contributions or restore forfeited accounts for rehired participants, leaving no meaningful
12  fiduciary discretion. *Naylor*, 2024 WL 4112322, at *5-6.

13        Similarly, the court's reasoning in *Hutchins II* does not undermine Plaintiff's
14  position.  In *Hutchins II*, the Court reasoned that although HP was acting as a fiduciary in
15  the allocation of forfeitures, it was acting as settlor when deciding whether plan expenses
16  would be paid by the employer or from plan assets each year:

17          The latter point—about HP's retention of discretion—
18        merits a clarification regarding the Court's Order on HP's first
19        motion to dismiss. There, the Court determined that Plaintiff was
20        attacking Defendant's implementation of a specific Plan term: §
21        11(h), which states that "[a]mounts forfeited ... may be used to
22        reduce employer contributions, to restore benefits previously
23        forfeited, to pay Plan expenses, or for any other permitted use."
24        [Citation.] In finding that Plaintiff had adequately alleged that
25        HP acted as a fiduciary when it implemented that Plan term,
26        [citation], the Court determined that HP acts as a fiduciary when
27        it takes the concrete action of allocating forfeitures.

28          Importantly, however, the fiduciary allocation decision is

restricted by the reservation in Plan § 17(b).  In that section of the Plan, the document states that "[t]he Company shall have complete and unfettered discretion whether an expense of the Plan or Trust shall be paid by the Participating Companies or out of the Trust Fund, and *this Section shall not be construed to require the Participating Companies to pay any portion of the expense of the Plan*." [Citation.]  This Plan term indicates that HP acting as settlor determines whether, in a given year, Plan expenses will be paid by HP or charged to Plan participants' accounts. *Id.*; see *Hughes Aircraft Co.*, 525 U.S. at 444 (explaining that decisions about "who is entitled to receive Plan benefits and in what amounts" are settlor functions). Then, HP acting as fiduciary implements the allocation of the forfeitures. [Citation.]

*Hutchins v. HP Inc.*, No. 5:23-CV-05875-BLF, 2025 WL 404594, at *4 (N.D. Cal. Feb. 5, 2025) ("*Hutchins II*") (emphasis added).

The Plans here do not contain language comparable to the language addressed by the court in *Hutchins II*, which specifically reserved to the company complete discretion as to whether any plan expenses would be paid by the participating companies or from the trust fund, explicitly stating that the provision "shall not be construed to require the Participating Companies to pay any portion of the expense of the Plan."  In contrast, JPMorgan's Plan expressly provides a fiduciary choice regarding the use of forfeited funds for paying Plan expenses or offsetting future contributions, without any such explicit reservation potentially negating a fiduciary duty.

More significantly, however, the district court in *Hutchins II* was fundamentally incorrect on the legal issue.  The court cited *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), as authority for its conclusion that the allocation of expenses constituted a settlor rather than fiduciary function.  The *Hutchins II* court, however, misunderstood and

1   misapplied *Hughes*.  In *Hughes*, the Supreme Court specifically addressed whether the
2   employer acted as a fiduciary when it amended plan documents to create a new,
3   noncontributory benefit structure and an early retirement program funded by a surplus in
4   the plan's assets.  In that decision, the Supreme Court clarified that ERISA distinguishes
5   between the act of amending plan documents—which is inherently a settlor activity—and
6   the act of administering the plan—which involves fiduciary responsibilities. *Hughes*
7   *Aircraft*, 525 U.S. at 444.  The Court emphasized that "[p]lan sponsors who alter the terms
8   of a plan do not fall into the category of fiduciaries." *Id.* at 445.  In reaching this conclusion,
9   the Court pointed to its prior decision in *Lockheed Corp. v. Spink*, 517 U.S. 882, 883, where
10  it held that "'the act of amending a pension plan does not trigger ERISA's fiduciary
11  provisions.'" *Id.* at 439.

12      Critically, the Court in *Hughes* explicitly limited its holding to the creation or
13  amendment of plan terms, recognizing that these are fundamentally settlor actions akin to
14  trust creation. In contrast, the Court in clearly distinguished settlor amendments from
15  fiduciary actions involving plan administration.  Indeed, the Supreme Court noted that
16  ERISA's fiduciary duties explicitly apply to decisions regarding the management and
17  administration of plan assets under existing terms, stating that fiduciary responsibilities
18  attach when an employer exercises "discretionary authority or control over plan
19  management or administration." *Lockheed Corp.*, 517 U.S. at 890.  Indeed, under ERISA,
20  a person is considered a plan fiduciary if, among other things, "he exercises any
21  discretionary authority or discretionary control respecting management of such plan or
22  exercises any authority or control respecting management or disposition of its assets." 29
23  U.S.C. § 1002(21)(A).

24      Thus, the *Hutchins II* court erroneously conflated these separate acts—plan
25  amendments versus fiduciary implementation and administration of existing discretionary
26  provisions. Allocating plan expenses in accordance with existing discretionary plan
27  language, as is the case here, is not merely a settlor decision regarding plan structure or
28  design. Instead, such discretionary allocation decisions involve precisely the type of

1  discretion or control over the management or disposition of plan assets that the Supreme
2  Court identified as fiduciary.    Consequently, *Hughes* does not support the *Hutchins II*
3  court's broad proposition that all allocation decisions constitute settlor functions; rather, it
4  explicitly undermines it by reaffirming that fiduciary duties apply whenever a plan sponsor
5  exercises discretion in the administration or asset management of a plan under existing plan
6  terms.

7       Therefore, *Hutchins II*'s reliance on *Hughes* is misplaced, and JPMorgan's decision
8  to allocate forfeited funds under its Plan's existing discretionary language must be viewed
9  as fiduciary administration rather than settlor amendment. JPMorgan's exercise of its
10  discretion under existing Plan terms constitutes fiduciary activity.

11       The recent decision in *Clorox II*, aligns precisely with the circumstances presented
12  here.    In *Clorox II*, the plan similarly allowed fiduciaries discretion between using
13  forfeitures to offset employer contributions or pay plan expenses, without mandating a
14  priority. *Clorox II*, 2025 WL 732087 at *1-3. The court emphasized fiduciaries facing such
15  discretion must carefully evaluate options and choose in the best interests of participants,
16  not the employer. *Id*. at *3.

17       The *Clorox II* court rejected arguments similar to those made by JPMorgan here.
18  First, it held fiduciaries cannot simply shield themselves from ERISA liability by strictly
19  adhering to plan language without adequately considering participants' interests or
20  engaging in impartial deliberation. *Id.* at *4. Second, the court emphasized fiduciaries must
21  prioritize participants' interests when exercising discretion explicitly granted by the plan,
22  even if the plan allows alternatives benefiting the employer. *Id.* at *5.

23       Plaintiff here contends JPMorgan breached fiduciary duties by consistently opting
24  to offset JPMorgan's contributions, financially benefiting JPMorgan directly at
25  participants' expense. [Doc. 1 ("Complaint"), at ¶¶ 16-19.] The *Clorox II* decision supports
26  Plaintiff's position that fiduciaries cannot justify decisions based solely on plan language
27  if they neglect proper fiduciary diligence and prioritize their economic interests over
28  participants'. *Clorox II*, 2025 WL 732087 at *3-4.

Plaintiff's claims here align directly with *Clorox*'s reasoning. Defendants reserved fiduciary discretion within the JPMorgan Plan but exercised it in a self-serving manner without adequately considering participants' interests, plausibly stating fiduciary breach claims under ERISA's loyalty and prudence standards. See *Clorox II*, 2025 WL 732087 at *3-5; *Qualcomm, supra,* 2024 WL 2702207, at *2; *Intuit, supra,* 744 F.Supp.3d at 944-945.

### 4.    *JPMorgan Breached Its Fiduciary Duty.*

Under ERISA, fiduciaries must act "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104 (a)(1)(A)(ii).  The Plan permits discretion to use forfeitures for either covering Plan expenses or for employer contributions.  Plaintiff alleges Defendants systematically chose the latter, effectively reducing Defendants' own contribution costs rather than alleviating participant-borne Plan expenses.

By using Plan assets (forfeitures) to lower new employer contributions, JPMorgan confers a direct dollar-for-dollar benefit on itself. Courts have deemed such allegations sufficient to state a loyalty breach. *Qualcomm, supra*, 2024 WL 2702207, at *2; *Intuit*, *supra*, 744 F.Supp.3d at 944.

ERISA also requires fiduciaries to act "with the care, skill, prudence, and diligence" that a prudent person would exercise under similar circumstances. 29 U.S.C. § 1104(a)(1)(B). Plaintiff's allegations that Defendants diverted Plan assets (i.e., forfeitures) to offset new contributions – despite the Plan's expense-pay option – plausibly show an imprudent choice favoring Defendants at participants' expense.  Courts recognize that fiduciaries may breach prudence by forgoing available means to defray participant costs. *Intuit*, 744 F.Supp.3d at 945; *Qualcomm*, 2024 WL 2702207, at *3.

Even if Defendants argued the Plan's documents required them to use forfeitures solely to offset contributions (which the Plan language itself refutes by granting discretion), ERISA's fiduciary duties prevail over conflicting plan terms. 29 U.S.C. § 1104(a)(1)(D); see *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409 (2014).  As *Intuit* put it, Plan

1  provisions "alone would not excuse [Defendants] from fulfilling [their] fiduciary duties
2  under ERISA." *Intuit*, 744 F.Supp.3d at 944.

3      Accordingly, Defendants' repeated decision to channel forfeitures toward
4  JPMorgan's contributions instead of participants' benefit states a viable claim for breach
5  of fiduciary duty.

6      *5.    Plaintiff's Theory of Liability is Fully Consistent with Regulatory*
7          *and Legislative Guidance.*

8      JPMorgan argues that Plaintiff's theory conflicts with established legislative and
9  regulatory guidance purportedly permitting the use of forfeitures to offset future employer
10 contributions. However, JPMorgan misconstrues both the regulatory context and Plaintiff's
11 actual claims. JPMorgan heavily relies on the Treasury Department's proposed regulations
12 and related IRS guidance, asserting a longstanding administrative practice authorizing
13 forfeiture usage to offset employer contributions. Yet, these arguments fundamentally miss
14 the point of Plaintiff's claims.

15     Critically, Plaintiff does not dispute that regulations and the Internal Revenue Code
16 (IRC) allow plans, as a matter of plan design, to specify forfeitures "will be used" to offset
17 employer contributions.  JPMorgan overlooks the fact that Plaintiff's claims here do not
18 challenge whether such a design could theoretically exist under ERISA or the IRC. Instead,
19 Plaintiff's claim arises because the JPMorgan Chase 401(k) Savings Plan explicitly does
20 not mandate such a design. Rather, it provides fiduciaries explicit discretion to use
21 forfeitures either to offset employer contributions or to pay plan expenses. (Doc. 30-1
22 ("2021 Plan"), § 4.6, at ECF p. 36.)  This fiduciary discretion triggers ERISA's stringent
23 requirement that fiduciaries must act "solely in the interest" of participants. 29 U.S.C. §
24 1104(a)(1)(A).

25     JPMorgan misapplies Treasury Regulation § 1.401-7(a) and its corresponding IRC
26 provision, 26 U.S.C. § 401(a)(8), incorrectly suggesting that these rules categorically
27 mandate forfeitures be used to offset employer contributions. JPMorgan fails to
28 acknowledge that this regulation, by its own terms, explicitly applies only to "pension"

1  plans providing "definitely determinable benefits," and not to defined contribution profit-
2  sharing plans like the JPMorgan 401(k) Plans. See 26 C.F.R. §§ 1.401-7(a), 1.401-
3  1(b)(1)(i)-(ii); Rev. Rul. 71-313, 1971 WL 26693 ("section 1.401-7 of the Income Tax
4  Regulations do[es] not extend to profit-sharing plans.")   Multiple courts have explicitly
5  rejected the same arguments JPMorgan now advances, recognizing that these Treasury
6  regulations do not control forfeiture usage in profit-sharing defined contribution plans. See,
7  *Hutchins v. HP Inc.*, 737 F.Supp.3d 851, 859 (N.D. Cal. 2024) ("*Hutchins I*") ("Plaintiff is
8  correct that 26 C.F.R. § 1.401-7(a) does not apply to the Plan.").

9       Similarly misplaced is JPMorgan's reliance on the legislative history of the Tax
10  Reform Act of 1986 and the related House Conference Report, which merely states
11  forfeitures "may" be used to offset employer contributions. This legislative guidance
12  neither mandates forfeiture usage exclusively for employer contributions nor precludes
13  fiduciaries from prudently using forfeitures to defray legitimate plan expenses or enhance
14  participant benefits.

15       JPMorgan also erroneously suggests that the Treasury Department's 2023 proposed
16  regulations somehow require or even endorse exclusive use of forfeitures to offset
17  employer contributions. However, these regulations explicitly clarify only that forfeitures
18  "may" be used to reduce employer contributions, pay plan administrative expenses, or
19  increase participant benefits, without dictating a mandatory priority or prohibiting
20  fiduciary discretion. See Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg.
21  12282-01 (Feb. 27, 2023). As courts have recognized, such proposed regulations lack legal
22  effect and cannot override ERISA's fiduciary duties. *Qualcomm*, 2024 WL 2702207, at *7
23  ("the rule has not been adopted and has no force of law").

24       Even if the Treasury regulations and legislative history supported JPMorgan's
25  interpretation—which they clearly do not—such authority could not displace ERISA's
26  fiduciary obligations. ERISA fiduciaries must act "solely in the interest" of plan
27  participants, a duty that explicitly applies here given the fiduciary discretion set forth in
28  the Plans. Where forfeitures could reduce administrative expenses currently charged

directly to participant accounts, JPMorgan's consistent decision to prioritize its economic interests violates ERISA's duties of loyalty and prudence. *Qualcomm*, 2024 WL 2702207, at *2 ("Plaintiff plausibly claims that Defendants breached their fiduciary duty…by making a choice that put the employer's interests above the interests of Plan participants."); *Clorox II*, 2025 WL 732087, at *3-4 (fiduciaries must evaluate and prioritize participants' interests over their own).

JPMorgan's reliance on irrelevant or non-controlling regulatory and legislative guidance fails to justify their consistent fiduciary decisions favoring JPMorgan at the expense of Plan participants. Plaintiff's claims thus align squarely with ERISA's core fiduciary principles and controlling jurisprudence and should survive dismissal.

### C.    Plaintiff Has Properly Pled a Claim for Prohibited Transactions

ERISA § 1106(a)(1) bars fiduciaries from causing the Plan to engage in certain transactions with a "party in interest," and § 1106(b)(1) prohibits fiduciaries from dealing with Plan assets in their own interest. Plaintiff alleges a direct transaction – Plan assets (forfeitures) "exchanged" or reallocated to offset future employer contributions. Courts recognize such offsets as "use" of Plan assets within ERISA's prohibited-transaction provisions. *Intuit*, 744 F.Supp.3d at 948-949; *Qualcomm*, 2024 WL 2702207, at *6.

Defendants' own Plan designates JPMorgan and the Benefits Executive as named fiduciaries, giving them the authority (and discretion) to administer the Plan. Using forfeited Plan assets to reduce Defendants' corporate contribution obligations is self-dealing in direct violation of Section 1106(b)(1). Indeed, other courts have recently held that allegations that plan assets were used to offset employer contributions satisfy the "benefit" element for a prohibited transaction under Section 1106(a)(1)(D). *Randall on behalf of Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*, 2024 WL 713997, at *6 (D. Minn. 2024) (allegation that defendant "'reclassified dividends on the Plan's Preferred Stock' were used to Wells Fargo's benefit—to satisfy its matching contribution obligations . . .plausibly alleges" section 1106(a)(1)(D) prohibited transaction claim).

**D.    Plaintiff Has Properly Pled a Claim for Failure to Monitor**

Finally, Plaintiff's failure-to-monitor claim arises from JPMorgan's responsibility to ensure any individuals or committees administering the Plan comply with ERISA. 29 C.F.R. § 2509.75-8, FR–17; *Solis v. Webb*, 931 F.Supp.2d 936, 953 (N.D. Cal. 2012) ("Implicit within the duty to select and retain fiduciaries is a duty to monitor their performance."). Because Plaintiff sufficiently alleges multiple fiduciary breaches – through self-serving use of forfeitures, an anti-inurement violation, and prohibited transactions – Plaintiff also states a plausible claim that Defendants failed to oversee and correct these improper practices.

**E.    Plaintiff Properly Pled an Anti-Inurement Claim**

Defendants' use of forfeitures to offset employer contributions inures to their benefit and violates ERISA's anti-inurement provision. "[T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan […] and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Forfeited funds are Plan assets. Doc. 30-1 ("2021 Plan"), § 13.1, at ECF p. 79; *Intuit, supra*, 744 F.Supp.3d at 943 ("forfeitures are plan assets," and forfeited funds "remain plan assets"); *Qualcomm, supra*, 2024 WL 2702207 at *6 (forfeited "[n]onvested contributions fall within the functional definition of assets of the pension plan").

Where plan fiduciaries use forfeitures to reduce their "own financial burden to make contributions," courts have held "it is easy to come to the conclusion" a "benefit" inured in their favor. *Qualcomm* at *6. Alleging the employer "received a benefit amounting to 'millions of dollars in contribution expenses'" plausibly states an anti-inurement claim. *Intuit* at 946; see also *Randall, supra*, 2024 WL 713997, at *6 (in non-forfeiture cases courts have also held that using Plan assets "to satisfy [employer] matching contribution obligations. . .plausibly alleges" a benefit).

It is irrelevant whether the Plan mandates use of forfeitures to offset employer contributions, or merely gives discretion to do so, because ERISA's statutory duties

"trump[ ] the instructions of a plan document." *Dudenhoeffer, supra*, 573 U.S. at 421; 29 U.S.C. § 1104(a)(1)(D) (fiduciaries can follow Plan documents only insofar as they are consistent with ERISA).

## IV.     CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

Dated:  May 2, 2025                    HAFFNER LAW PC

                                       By:    */s/ Vahan Mikayelyan*
                                       Joshua H. Haffner
                                       Alfredo Torrijos
                                       Vahan Mikayelyan

                                       *Counsel for Plaintiff Daniel J. Wright*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Daniel J. Wright certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

Executed on May 2, 2025.

By: */s/ Vahan Mikayelyan*

Vahan Mikayelyan

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 2, 2025.


By: */s/ Vahan Mikayelyan*
Vahan Mikayelyan