Jeremy P. Blumenfeld (*pro hac vice*)
jeremy.blumenfeld@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000 | Fax: (215) 963-5001

Gina McGuire (*pro hac vice*)
gina.mcguire@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000 | Fax: (212) 309-6001

Kevin J. Bohm, Bar No. 329569
kevin.bohm@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard
Costa Mesa, CA 92626
Tel.: (714) 830-0600 | Fax: (714) 830-0700

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. WRIGHT, individually and as representative of a class of participants and beneficiaries and on behalf of the JPMorgan Chase 401K Savings Plan,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, N.A.; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-00525-JLS-JC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  May 30, 2025<br>Time:  10:30 a.m.<br>Ctrm:  8A<br>Judge: Hon. Josephine L. Staton |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    The Opposition Confirms That Plaintiff Lacks Article III Standing ........................................................................................................ 2

        A.    Plaintiff Does Not Allege A Concrete, Particularized Injury .................................................................................................. 2

        B.    Plaintiff's Theory Of Redressability Is Premised On A Distortion Of The Plan Terms ....................................................... 3

    II.    Plaintiff Does Not Meaningfully Dispute That His Theory Is Foreclosed By Longstanding Regulatory Guidance And Has Been Rejected By Courts .................................................................................. 4

        A.    The Plan's Use Of Forfeitures Complied With Regulatory Guidance ............................................................................................ 5

        B.    Courts Have Generally Rejected Plaintiff's Theory ................... 7

    III.    The Opposition Cannot Save Plaintiff's Individual Claims ................. 9

        A.    The Fiduciary Breach Claim Fails Because Plaintiff Alleges Neither Fiduciary Conduct Nor Breach Of Fiduciary Duty ............................................................................... 9

        B.    Plaintiff Concedes Forfeitures Are Not Removed From The Plan, Dooming His Anti-Inurement Claim ....................... 11

        C.    JPMorgan's Use Of Forfeitures Is Neither A "Transaction" Nor Is It Prohibited .......................................... 12

        D.    Plaintiff Concedes His Failure To Monitor Claim Is Purely Derivative Of Claims I–III .......................................... 13

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barragan v. Honeywell Int'l Inc.*,
  2024 WL 5165330 (D.N.J. Dec. 19, 2024) ...................................................... 7, 12

*Cunningham v. Cornell Univ.*,
  145 S. Ct. 1020 (2025) ...................................................................................... 3, 13

*Dimou v. Thermo Fisher Sci. Inc.*,
  2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ................................... 6, 7, 11, 12

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ................................................................................................ 4

*Hutchins v. HP Inc.*,
  __ F. Supp. 3d __, 2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ................. 7, 8, 10

*Hutchins v. HP Inc.*,
  737 F. Supp. 3d 851 (N.D. Cal. 2024) ........................................................ *passim*

*Liao v. Fisher Asset Mgmt., LLC*,
  2024 WL 4351869 (N.D. Cal. Sept. 30, 2024) ..................................................... 12

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ............................................................................................... 12

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) ....................................................................... 4, 9, 10

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
  2025 WL 1299002 (C.D. Cal. May 2, 2025) .......................................................... 7

*McManus v. Clorox Co.*,
  2025 WL 732087 (N.D. Cal. Mar. 3, 2025) ..................................................... 8, 10

*Naylor v. BAE Sys., Inc.*,
  2024 WL 4112322 (E.D. Va. Sept. 5, 2024) ............................................... 7, 9, 11

*Perez-Cruet v. Qualcomm Inc.*,
  2024 WL 2702207 (S.D. Cal. May 24, 2024) ......................................... 8, 10, 11

*Randall v. GreatBanc Tr. Co.*,
  2024 WL 713997 (D. Minn. Feb. 21, 2024) ........................................................ 12

*Rodriguez v. Intuit*,
  744 F. Supp. 3d 935 (N.D. Cal. 2024) ................................................ 7, 8, 10, 11

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
  __ F. Supp. 3d. __, 2025 WL 1248922 (D. Ariz. Apr. 30, 2025) ........................ 7

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................................................... 2, 3

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020) ....................................................................................... 2, 3

**Statutes**

29 U.S.C.
  § 1103(c)(1) ...................................................................................................... 11
  § 1104(a)(1)(D) .................................................................................................. 4
  § 1106 ............................................................................................................... 12

**Other Authorities**

26 C.F.R. § 1.401-7(a) ................................................................................................ 6

83 Fed. Reg. 34469 (July 20, 2018) ........................................................................... 6

88 Fed. Reg. 12282 (Feb. 27, 2023) ........................................................................... 6

H.R. Rep. No. 99-841, Vol. II (1986) ......................................................................... 5

# INTRODUCTION

Plaintiff's Opposition ("Opposition") cannot save his claims from dismissal.[1]

*First*, Plaintiff lacks Article III standing because his allegations establish that he received all the benefits he was promised under the Plan. Plaintiff does not allege that he paid *any* Plan expenses, and in any event the Plan terms he relies on do not allow forfeitures to be used to pay *his share* of Plan expenses. As such, Plaintiff does not allege any injury from the Plan's use of forfeitures, or that this lawsuit could redress any such injury.

*Second*, Plaintiff's allegations fail to state a claim. The Opposition concedes that JPMorgan complied with the Plan and decades of regulatory guidance allowing forfeitures to be used exactly as he alleges they were used here. Plaintiff's claims are thus each subject to dismissal: (1) his breach of fiduciary duty claim fails because he does not challenge fiduciary conduct or allege a plausible breach of fiduciary duty; (2) his anti-inurement claim fails because Plaintiff does not allege that any funds left the Plan; (3) his prohibited transactions claim fails because Plaintiff does not allege a "transaction," much less one that is prohibited under ERISA; and (4) his failure to monitor claim fails because it is derivative of—and falls with—his other claims.

Faced with these factual and legal hurdles and advancing a theory that has been largely rejected by courts, Plaintiff attempts a sleight of hand. He insists that the Plan allows forfeitures to be used to pay any Plan expenses, or *his* share of Plan expenses. It does not; to the contrary, it permits forfeitures to be used only to "reduce future contributions *of the Bank* or *the Bank's share* of Plan expenses." Plan § 4.6 (emphasis added). Plaintiff is plainly not the "Bank" (*id.* § 1.8), so forfeitures cannot be used to pay *his* share of Plan expenses.

Plaintiff nevertheless insists that ERISA somehow requires JPMorgan to always use forfeitures to benefit him personally. It does not; settled authority, which

---

[1] Terms defined in the Motion to Dismiss ("Motion") have the same meanings herein.

the Opposition neither cites nor refutes, makes clear that JPMorgan is not obligated to use forfeitures in the way Plaintiff demands. The Opposition also makes a series of critical concessions, relies on distinguishable case law, and generally fails to engage with the multiple bases for dismissal described in the Motion.

The Court should dismiss the Complaint. And because its defects cannot be cured through amendment, and Plaintiff has not sought leave to amend, the dismissal should result in judgment in favor of JPMorgan.

## ARGUMENT

### I.     The Opposition Confirms That Plaintiff Lacks Article III Standing

As Plaintiff does not dispute, he must "clearly . . . allege facts demonstrating" that he has suffered a concrete, particularized injury and that such injury is redressable via his claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). The Opposition confirms he does not, and cannot, do so.

### A.     Plaintiff Does Not Allege A Concrete, Particularized Injury

The Motion described how, despite the requirement to allege a concrete and particularized injury to *his own* Plan account, Plaintiff makes no such allegation. He does not allege that he was deprived of any benefit promised to him, that his Plan account was reduced, or that he ever paid any expenses himself. Mot. at 5-7. Merely alleging harm to the Plan, as Plaintiff does here, is insufficient to gain Article III standing because "the litigants themselves still must have suffered an injury in fact." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020) (citation omitted) (rejecting argument that injury to an ERISA plan confers Article III standing on participants).

The Opposition concedes this fundamental premise, but nevertheless asserts Plaintiff has standing by merely repeating the deficient Complaint allegations that JPMorgan's use of forfeitures "deprive[d] the *Plan*—and thus its *participants*—of funds that could otherwise reduce administrative costs borne by the participants." Opp'n at 4-5 (citing Compl. ¶¶ 16-18) (emphasis added). This is wrong. First, the Opposition can point to no allegation of an injury to Plaintiff personally. Rather, the

cited allegations refer only to alleged injuries to the "*Plan*" and "*participants*" generally. Compl. ¶ 18 (the use of forfeitures "harmed the Plan and participants in the Plan"). Second, conclusory statements about reductions "in net Plan assets" available for participants generally, Opp'n at 5, do not satisfy Article III without allegations of an injury to Plaintiff personally. *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1032 (2025) ("District courts must also, consistent with Article III standing, dismiss [ERISA] suits that allege a prohibited transaction occurred but fail to identify an injury."). Third, Plaintiff's only cited authority, *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), illustrates why Plaintiff lacks Article III standing here. Plaintiff cites *Spokeo* for the uncontroversial point that "economic injuries, even if small, establish concrete injury for standing purposes." True enough. But *Spokeo* involved a plaintiff challenging inaccuracies in a credit report about *him*, and the Supreme Court recounted at length the need for a particularized injury *to the plaintiff* to establish Article III standing, *id*. at 339 (collecting cases and noting the alleged injury must be "distinct" and "affect the plaintiff in a personal and individual way") (citations omitted). Plaintiff makes no allegation of any economic injury to him personally—big or small—and thus has not suffered a concrete and particularized injury capable of conferring Article III standing.

### B. Plaintiff's Theory Of Redressability Is Premised On A Distortion Of The Plan Terms

Even if Plaintiff had alleged a concrete and particularized injury, the Motion explained, at 7-8, why any such injury is not redressable: if Plaintiff were to prevail in this litigation and assert an entitlement to forfeitures, the Plan itself sets forth the only two permitted uses of forfeitures—reducing JPMorgan's future contributions to the Plan or reducing "the Bank's share" of Plan expenses—neither of which would enable Plaintiff to receive "a penny more." *Thole*, 590 U.S. at 541.

The Opposition's only response, at 6, is to assert that "[i]f Defendants are compelled to reallocate forfeitures to cover administrative expenses or to enhance

participant accounts directly," participants' "net returns will increase." This argument simultaneously distorts the Plan and misconstrues ERISA. The Plan states unequivocally what JPMorgan may do with forfeitures: use them to (1) "reduce future contributions of [JPMorgan]" or (2) "reduce . . . [JPMorgan's] share of Plan expenses." Neither option gives JPMorgan the ability to use forfeitures to "cover [*Plaintiff's share of*] administrative expenses" or "enhance [*Plaintiff's*] account[]."

As the Motion argued, at 6-7, and Plaintiff concedes, ERISA requires JPMorgan to administer the Plan in accordance with its lawful terms. 29 U.S.C. § 1104(a)(1)(D). Plaintiff does not suggest (nor could he) that the Plan or its terms governing forfeitures violate ERISA. Nor does Plaintiff cite any authority for the proposition that courts can override otherwise valid plan terms to compel employers to grant additional benefits to employees beyond what they were promised. *Cf. Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not . . . requir[e] employers to make pension plans more valuable to participants. . . . So the participants' argument that [defendant] should have ponied up additional money, to cover the operating expenses of their retirement vehicles, is a non-starter."). At bottom, Plaintiff's assertion that his purported injury is redressable hinges on the premise that the Court should order JPMorgan to use forfeitures to pay *his* share of Plan expenses—an outcome the Plan does not permit, and the law does not require.

## II. Plaintiff Does Not Meaningfully Dispute That His Theory Is Foreclosed By Longstanding Regulatory Guidance And Has Been Rejected By Courts

The Motion described, at 8-14, why Plaintiff's theory contradicts core ERISA principles, because he asks the Court to award him greater benefits than the Plan promised. Congress enacted ERISA to ensure retiring employees receive the benefits they were promised, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999), and—critically—Plaintiff does not dispute that he did so here. Nevertheless, Plaintiff claims ERISA creates an *additional* entitlement to more than the Plan promised him,

by requiring JPMorgan to use forfeitures to increase *his* benefits—and that ERISA does so without even mentioning forfeitures in the statutory text.

But ERISA creates no such entitlement, which explains why Plaintiff has no answer for the fact that his claims run counter to (1) decades of regulatory guidance permitting forfeitures to be used in precisely the way the Plan used them here and (2) the growing consensus of courts rejecting similar forfeiture claims.

### A.   The Plan's Use Of Forfeitures Complied With Regulatory Guidance

The Motion recounted, at 11-14, an uninterrupted history of rules, regulations, and other guidance—spanning more than six decades—permitting ERISA-governed plans to use forfeitures as JPMorgan did here. This includes existing and proposed Treasury regulations and settled guidance, all of which Plaintiff's theory would effectively abrogate. It also includes legislative history establishing that Plaintiff's claims are fundamentally at odds with Congress's intent and understanding.

The Opposition concedes, at 19, that the regulations permit using forfeitures to offset employer contributions. But Plaintiff insists his claim is viable nonetheless because the Plan gives JPMorgan "discretion to use forfeitures either to offset employer contributions *or to pay plan expenses*." Opp'n at 19 (emphasis added). Plaintiff again distorts the Plan by omitting that it permits using forfeitures *only* to pay "*the Bank's* share of Plan expenses"—not his.

Plaintiff also offers no support for his attempted distinction, at 19, between plans that *mandate* using forfeitures to offset employer contributions (plans that "specify forfeitures 'will be used'")—which he apparently believes are permissible—and plans that *permit* them to be used for employer contributions or for other purposes, such as paying administrative expenses. That distinction certainly appears nowhere in the regulations and other guidance, which make clear that both uses are allowed. *See* H.R. Rep. No. 99-841, Vol. II at 442 (1986) (forfeitures may be used to "reduce future employer contributions or administrative costs"); 83 Fed. Reg. 34469, 34470 (July 20, 2018) (final regulations permitting "forfeitures of prior contributions

to be used to fund" qualified employer contributions); 88 Fed. Reg. 12282, 12285 (Feb. 27, 2023) (proposed Treasury regulation permitting use of forfeitures to "pay plan administrative expenses" or "reduce employer contributions").

Plaintiff's other assertions fare no better. He argues, at 19-20, that 26 C.F.R. § 1.401-7(a), a Treasury regulation allowing forfeitures to be used to reduce employer contributions, applies only to pension plans, not defined contribution plans. Not only do the ERISA provisions under which he sues apply equally to both types of plans, but Plaintiff concedes, at 19, that Congress and the IRS have repeatedly confirmed that defined contribution plans, like the Plan, may use forfeitures to offset employer contributions. *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024) (§ 1.401-7(a) is "relevant authorit[y] in evaluating the plausibility of the plaintiff's claims"); *accord* 83 Fed. Reg. at 34470.[2]

He argues further, at 20, that other authority on which JPMorgan relies—the Tax Reform Act of 1986, regulations regarding qualified matching and non-elective contributions, and a proposed new Treasury regulation—permit ("may"), but do not require, that forfeitures be reallocated to offset employer contributions or pay plan expenses. That concession is fatal to Plaintiff's claims, because it means that the Plan does exactly what Plaintiff concedes it "may" do.

At bottom, Plaintiff cannot dispute that the Plan's use of forfeitures aligns with how Congress, the IRS, and seemingly everyone else have understood the law since the 1960s. No authority prohibits the practice; to the contrary, it has repeatedly been expressly authorized. In effect, Plaintiff argues that agency rulings, a regulatory body, and even Congress have endorsed a use of forfeitures that is unlawful. This is untenable and underscores the implausibility of these claims.

---

[2] Plaintiff cites *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 859 (N.D. Cal. 2024) ("*Hutchins I*"), for the proposition that "§1.401-7(a) does not apply to stock bonus plans," Opp'n at 20, but he omits the ensuing conclusion that "the Court agrees with Defendants that [§ 1.401-7(a)] may be considered as persuasive authority in evaluating the plausibility of Plaintiff's claims."

### B. Courts Have Generally Rejected Plaintiff's Theory

The Motion described, at 9-10, the emerging consensus of courts that have rejected similar forfeiture-based claims on grounds that (1) they are foreclosed by longstanding regulatory guidance; and (2) ERISA does not compel sponsors to award additional benefits beyond what participants were promised under the plan. *See Hutchins I*, 737 F. Supp. 3d 851; *Hutchins v. HP Inc.*, __ F. Supp. 3d. __, 2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ("*Hutchins II*"); *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330 (D.N.J. Dec. 19, 2024); *Dimou*, 2024 WL 4508450; *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024). And, since the Motion was filed, two additional courts—including Judge Ramírez Almadani—have also rejected forfeiture claims. *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *4 (C.D. Cal. May 2, 2025) ("Plaintiff's interpretation of a fiduciary's duty under ERISA is relatively novel and marks a significant departure from previously well-settled law."); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, __ F. Supp. 3d. __, 2025 WL 1248922, at *7 (D. Ariz. Apr. 30, 2025) (granting dismissal without leave to amend because "Plaintiffs' novel theory . . . is unsupported by the law as it currently stands").

Plaintiff makes no mention of *Barragan* and *Dimou* and does not wrestle with the central holdings in *Hutchins I*, *Hutchins II*, and *Naylor*—each of which rejects the fundamental premise of his claims—that ERISA somehow compels plan sponsors to confer additional benefits to participants beyond what the plan promises. *See Naylor*, 2024 WL 4112322, at *6 ("Plaintiff's position regarding forfeitures reduce to an argument that Defendant was required by ERISA to disregard the terms of the Plan and, contrary to the terms of the Plan, prioritize the use of forfeitures for . . . the payment of administrative costs or a windfall to Plan participants, a proposition uniformly rejected by the courts.").

The cases Plaintiff cites instead are readily distinguishable based on their allegations and plan language. *Rodriguez v. Intuit*, 744 F. Supp. 3d 935 (N.D. Cal.

2024); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024); *McManus v. Clorox Co.*, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025).

Although Plaintiff ignores the point, the plaintiff in *Intuit* alleged that the defendant was using forfeitures in a way that violated the plan. 744 F. Supp. 3d at 944 ("[Plaintiff] has . . . plausibly alleged that the Plan did not authorize the specific decisions made by Intuit with respect to the use of forfeited Matching Contributions."). In fact, *Hutchins II* distinguished *Intuit* on this basis. 2025 WL 404594, at *6. Plaintiff does not (and cannot) make a similar allegation here, rendering *Intuit* irrelevant.

Plaintiff's reliance on *Qualcomm* is also unavailing. Like *Intuit*, the plaintiff in *Qualcomm* alleged that the defendant's use of forfeitures violated plan terms, because the defendant used forfeitures to offset delinquent contributions. 2024 WL 2702207, at *2. In fact, the plaintiff in *Qualcomm* distinguished *Hutchins I* on that basis. *See* Opp'n to Mot. for Recons. at 9, No. 23-cv-1890 (S.D. Cal. July 22, 2024), Dkt. 24 ("In evaluating whether it is unlawful under ERISA to use forfeitures . . . to reduce employer contributions, the *Hutchins [I]* Order reasoned that using forfeitures to offset 'outstanding and unpaid amounts owed,' such as 'delinquent' employer contributions, would be problematic . . . . [T]he Complaint does allege that forfeitures were used to offset 'Company delinquent contributions to the Plan.'"). Moreover, *Hutchins I* criticized *Qualcomm*, describing its analysis as "conclusory" and not "persuasive in deciding the motion to dismiss." 737 F. Supp. 3d at 862 n.1.[3]

---

[3] Like *Intuit* and *Qualcomm*, *Clorox* involved a plan that allowed forfeitures to be used to pay *any* plan expenses, including participant expenses. *See* Clorox Co. 401(k) Plan § 8.02(a)(i), No. 23-cv-05325 (N.D. Cal. Dec. 13, 2023), Dkt. 25-1 ("Forfeited amounts will be used, as determined by the Committee in its sole discretion, to pay Plan expenses, [or] to reduce contributions to the Plan."). The *Clorox* court based its denial of the motion to dismiss on precisely this issue. 2025 WL 732087, at *5 (crediting allegation that Clorox used forfeitures to "offset Clorox's contributions instead of saving *plan participants* the cost of administrative fees") (emphasis

Plaintiff's argument that a plan sponsor violates ERISA by using forfeitures to offset employer contributions instead of paying *participant* expenses is flawed because it misreads ERISA to require the provision of benefits beyond those promised by the plan. *Loomis*, 658 F.3d at 671. That logic also has no application here. The *only* choices under the Plan are to use forfeitures to reduce JPMorgan's future contributions or *JPMorgan's* share of Plan expenses not paid directly by the Plan. There is simply no basis to use forfeitures to confer additional benefits to Plaintiff, or to reduce Plaintiff's share of Plan expenses. Thus, the overwhelming weight of authority—and the *only* factually aligned decisions—compel dismissal.

## III. The Opposition Cannot Save Plaintiff's Individual Claims

### A. The Fiduciary Breach Claim Fails Because Plaintiff Alleges Neither Fiduciary Conduct Nor Breach Of Fiduciary Duty

The Motion described, at 14-18, how (1) JPMorgan's use of forfeitures does not constitute the exercise of discretionary authority and thus does not implicate fiduciary conduct; and (2) even if it did, the mere allegation that JPMorgan used forfeitures in compliance with Plan terms cannot constitute a breach of fiduciary duty. Plaintiff cannot overcome these deficiencies.

Attempting again to manufacture discretion where none exists, the Opposition asserts, at 15, that the Plan "provides a fiduciary choice regarding the use of forfeited funds for paying Plan expenses or offsetting future contributions." Here, too, Plaintiff omits the Plan's express limitations on the use of forfeitures and which Plan expenses JPMorgan can pay. JPMorgan has two options: it can use forfeitures to either (A) "reduce [JPMorgan's] future contributions" or (B) "reduce . . . the Bank's share of Plan expenses not paid directly by the Plan." Plan § 4.6. Plaintiff insists JPMorgan should have instead chosen a nonexistent Option C to pay *his* share of Plan expenses, but the Plan does not make that option available. *Naylor*, 2024 WL 4112322, at *7

---

added). That decision is wrong, but it also does not help Plaintiff, because the Plan could not use forfeitures to pay *Plaintiff's* share of Plan expenses.

(when an employer adheres to plan terms governing the use of forfeitures, "it [does] so in its capacity as a 'settlor,' which does not give rise to fiduciary duties under ERISA") (citation omitted).

Perhaps recognizing this flaw in his theory, Plaintiff distorts the Plan's plain language. He insists, at 9, that the term "share" in Section 4.6 refers to the share of expenses between JPMorgan and a "Participating Company," rather than between JPMorgan and Plan participants. But this argument makes no sense. Section 4.6 allows the Plan to use forfeitures to pay "the Bank's" share of expenses—not participants' share. Of course, the Plan could have said that forfeitures can be used to reduce participant expenses, or Plan expenses generally (like the *Clorox*, *Intuit*, and *Qualcomm* plans), but it does not.

He then argues that other Plan provisions (§§ 6.9, 12.10) give JPMorgan the authority to use forfeitures to pay any Plan expenses, including his share of such expenses. But these provisions have nothing to do with forfeitures and say nothing about whether JPMorgan can use forfeitures to pay *participants'* expenses—an issue expressly addressed and foreclosed in Section 4.6. In all events, Plaintiff's desire for JPMorgan to use forfeitures in ways not contemplated by the Plan is a challenge to the Plan's design, not fiduciary conduct. *Loomis*, 658 F.3d at 671 (an employer's decision to "cover [plan] expenses" is "a question of plan design"); *accord Hutchins II*, 2025 WL 404594, at *3-4.

The Motion also explained, at 16-19, why, even if Plaintiff had challenged fiduciary conduct, he does not plausibly allege any breach of fiduciary duty because the Complaint alleges only that JPMorgan used forfeitures as the Plan required and ERISA allows. The Opposition superficially asserts, at 18-19, that JPMorgan did not act loyally or prudently because it did not use forfeitures for Plaintiff's personal benefit, but this misconstrues ERISA's fiduciary duties. Plaintiff's claim presumes a personal entitlement to forfeitures, such that using them for any other purpose is "disloyal" or "imprudent." But ERISA does not mandate paying expenses where "the

Plan does not provide any such benefit, and Plaintiff does not allege any facts showing that he is entitled to such a benefit." *Hutchins I*, 737 F. Supp. 3d at 863. Nor does ERISA create an "exclusive duty of maximizing pecuniary benefits," meaning "it is neither disloyal nor imprudent" to use forfeitures as the Plan and the law have always allowed. *Id*.

### B. Plaintiff Concedes Forfeitures Are Not Removed From The Plan, Dooming His Anti-Inurement Claim

The Motion argued, at 18-19, that Plaintiff's anti-inurement claim must be dismissed because the Complaint does not (and cannot) make the required threshold allegation that JPMorgan's use of forfeitures results in removal of funds from the Plan; to the contrary, it alleges only that forfeitures remain *in* the Plan and are simply reallocated to other accounts. The Opposition concedes this fundamental, dispositive issue and does not contend with the long line of cases that have rejected identical claims. *See Hutchins I*, 737 F. Supp. 3d at 864-67; *Naylor*, 2025 WL 4112322, at *7; *Dimou*, 2024 WL 4508450, at *10.

Instead, Plaintiff asserts, at 22, that JPMorgan's use of forfeitures "inures to [JPMorgan's] benefit." This misstates the nature of forfeitures and relies on the false premise that their use to offset future contributions somehow results in a windfall for JPMorgan. It does not. Plaintiff's Complaint focuses on forfeitures of funds that JPMorgan previously contributed to the Plan for participants who left JPMorgan before the contributions vested, and thus did not become entitled to them. Those forfeitures thus always were, and remain, employer contributions, and their reallocation within the Plan "provid[es] benefits to participants"—exactly as ERISA requires. 29 U.S.C. § 1103(c)(1). Plaintiff's only other argument is to rehash the *Intuit* and *Qualcomm* decisions, but they involved allegations—not present here—that the defendants violated plan terms by using forfeitures in ways that were prohibited by the plan, and thus the misuse of funds as forfeitures inured to the defendants' benefit. *Supra* § II(B).

### C. JPMorgan's Use Of Forfeitures Is Neither A "Transaction" Nor Is It Prohibited

Putting aside Plaintiff's failure to allege a predicate fiduciary act, *supra* § III(A)—which he does not dispute is necessary to state a prohibited transaction claim—using forfeitures to provide benefits to other participants is not a "prohibited transaction." Mot. at 19-20.

First, there is no "transaction" alleged at all. As the Motion explained, at 20, and the Opposition does not dispute, the mere "payment of benefits" under a plan is not a "transaction" within the scope of 29 U.S.C. § 1106. *Lockheed Corp. v. Spink*, 517 U.S. 882, 893-95 (1996). The Opposition asserts, at 21, that JPMorgan's use of forfeitures constitutes an "exchange[]" or a "reallocat[ion]" of Plan assets, but Plaintiff has no answer for the fact that a growing number of courts have reached the self-evident conclusion that reallocating forfeitures *within a plan* in accordance with plan terms is not a "transaction," because those forfeitures "remain Plan assets and are merely reallocated to provide . . . benefits to other employees through use as matching contributions." *Hutchins I*, 737 F. Supp. 3d at 868; *accord Barragan*, 2024 WL 5165330, at *7; *Dimou*, 2024 WL 4508450, at *11; *Liao v. Fisher Asset Mgmt., LLC*, 2024 WL 4351869, at *6 (N.D. Cal. Sept. 30, 2024).[4]

Second, even if this type of intra-plan reallocation were a transaction, it is not prohibited. It is implausible to conclude that the IRS and Congress have for decades allowed using forfeitures as the Plan does, if doing so is simultaneously a transaction ERISA prohibits. Nor would the Treasury Department issue new proposed regulations expressly allowing defined contribution plans to engage in "transactions"

---

[4] Plaintiff's citation, at 21, to *Randall v. GreatBanc Trust Co.*, 2024 WL 713997, at *6 (D. Minn. Feb. 21, 2024), does not alter the analysis. *Randall* had nothing to do with forfeitures, and instead involved allegations that the plan and sponsoring employer undertook a series of loans, stock sales at above-market prices, and dividend reclassifications.

that ERISA precludes.[5] The Opposition offers no answer to this fundamental flaw in Plaintiff's prohibited transaction theory.

### D. Plaintiff Concedes His Failure To Monitor Claim Is Purely Derivative Of Claims I–III

The Opposition concedes, at 22, that Plaintiff's failure to monitor claim is premised solely on the allegations underlying Claims I–III. Because those claims fail, Claim IV does as well.

## CONCLUSION

JPMorgan respectfully requests that the Court dismiss the Complaint in its entirety without leave to amend.

Dated: May 16, 2025

Kevin J. Bohm, Bar No. 329569
kevin.bohm@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard
Costa Mesa, CA 92626-7653
Tel.: (714) 830-0600
Fax: (714) 830-0700

Respectfully submitted,

By: */s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld (*pro hac vice*)
jeremy.blumenfeld@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001

Gina McGuire (*pro hac vice*)
gina.mcguire@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

---

[5] Nor does the Supreme Court's recent *Cornell* decision, 145 S. Ct. 1020, help Plaintiff because he does not allege a transaction with a party in interest.

**Local Rule 11-6.2 Certification**

The undersigned, counsel of record for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., certifies that this brief contains 4,199 words, which complies with the word limit of L.R. 11-6.1 and the Court's Procedure No. 7 (Length and Format of Motions and Proffered Evidence).

Dated: May 16, 2025       By: */s/ Jeremy P. Blumenfeld*
                              Jeremy P. Blumenfeld

**Certificate of Service**

I certify that on May 16, 2025, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF filing system.

Dated: May 16, 2025       By: */s/ Jeremy P. Blumenfeld*
                              Jeremy P. Blumenfeld